CARDER et al. v. BLACKWELL OIL & GAS CO.

No. 10274—Opinion Filed Sept. 27, 1921.

Rehearing Denied Oct. 25, 1921.

(Syllabus.)

1. Contracts—Construction as a Whole— Intention of Parties.

In the construction of a contract, the intentions of the parties must be deduced from the entire agreement, not from any part or parts of it; and where a contract has several stipulations and the intention of the contracting parties is not expressed by any single clause or stipulation, but by

every part and provision in it, which must all be considered together and so construed as to be consistent with every part, and give every clause and part a proper meaning, if possible.

In arriving at the meaning of a contract, we must bear in mind that the primary object of all rules of interpretation and construction is to arrive at and give effect to the mutual intent of the parties, as expressed in the contract, and that, where an ambiguity arises for any reason in a contract, the true intention of the parties, if it can be ascertained from the contract, prevails over verbal inaccuracies, inapt expressions, and the dry words of the stipulation. We must also bear in mind that it is the duty of the court to place itself, as far as possible, in the position of the parties at the time the contract was entered into, and then to consider the instrument itself as having been drawn, and the purposes which it is intended to express, in the light of the circumstances thus surrounding the transaction, and, from a consideration of all these elements, to determine upon what sense or meaning of the terms used the minds of the contracting parties actually met.

**2. Oil and Gas—Leases — Construction — Favoring Development.**

Ordinarily, oil and gas leases are executed for the purpose of exploring and operating for oil and gas, and where their terms will permit it, under the rules of law, such leases will be construed so as to permit development and prevent delay and unproductiveness.

**3. Same — Subsequent Lease. Superseding First.**

Where parties enter into a lease contract pertaining to oil and gas where a prior lease had existed between the parties and the second lease states that this lease shall take the place of and stand in lieu of said prior lease, and where the plain and specific provisions of the second lease, by the plain intendment of their language, express the purposes of the parties, the conditions and stipulations of the second contract shall control, and this is especially so if the second contract, when viewed in the light and under the circumstances under which the parties entered into the same, bears out the conclusion that it was the purpose of the parties that the conditions of the second contract should control.

**4. Same—Action to Cancel Lease—Relief— Cancellation in Part.**

A court of equity has the power to conform its decrees to the varying circumstances of each particular case, and if the evidence shows that a part of the leased premises under the oil and gas lease has been developed and by contract provision the rights of the lessee are protected in such development, and that other portions of said lease have not been developed in compliance with the contract terms, the court may cancel the lease as to the undeveloped portion and permit the lessee to continue to operate the developed part thereof.

Error from District Court, Kay County; W. M. Bowles, Judge.

Action by James A. Carder and another against the Blackwell Oil & Gas Company to cancel oil lease. Judgment for defendant and plaintiffs bring error. Reversed and remanded.

C. L. Pinkham, Claude Duval, and W. S Cline, for plaintiffs in error.

H. S. Gurley and A. G. C. Bierer, for defendant in error.

ELTING, J. This suit was commenced in the district court of Kay county, state of Oklahoma, by James A. Carder and Ida Carder, against the Blackwell Oil & Gas Company, a corporation. The plaintiffs below are the plaintiffs in error in this suit, and the defendant below is the defendant in error in this appeal. We will hereafter refer to them as plaintiffs and defendant.

Plaintiffs filed suit for the purpose of canceling an oil and gas lease on the lands of the plaintiffs for a breach of the following provisions of said contract:

"To have and to hold the above described premises and all the rights and privileges therein granted unto said Blackwell Oil & Gas Company, its successors and assigns for the term of three years from this date and so much longer as oil or gas is found or produced on such premises in paying or commercial quantities"

—and the further provision:

"It is hereby agreed that the party of the second part shall drill one additional well for gas on said premises prior to the first day of March, 1915, and on the failure to drill said well prior to said date, then the party of the second part shall pay on said date to party of the first part the sum of $100.00 and the sum of $100.00 for each year thereafter which the drilling of said well is delayed and upon the drilling of said well the payments shall cease, and if said well is a commercial well, that is to say, if it produces gas in paying and commercial quantities, then the payments for said well shall be made for the same as such under the other covenants and agreements of this lease."

The date of said lease is the 9th day of November, 1914. Then it is alleged that the lessee has not bored such additional well; alleged, further, that they refused to accept the payments of rentals provided for

in said lease for the last payment next before expiration of the three-year term of the lease, and that the lessors and plaintiffs refused to accept further gas from the well of the defendant. and gave notice of intention to forfeit the lease unless the defendant got production during the term in an additional well. And then prayed that the said lease be canceled and set aside and held for naught, and that title be quieted in plaintiffs in and to the land. .

The plaintiffs in their petition alleged, further, that on the 28th day of June, 1909, the plaintiffs made, executed, and delivered to the Blackwell Brick, Tile & Gas Company an oil and gas mining lease on the premises described in the lease dated November 9, 1914, and that afterwards the said first named lease was assigned to the Blackwell Oil & Gas Company by the Blackwell Brick, Tile & Gas Company. That prior to the date of the lease of the 9th of November, 1914, the defendant had drilled a gas well on said premises and that the plaintiffs, being dissatisfied over the actions of the defendant in regard to development, filed a suit against the defendant to require further development, and that in order to compromise the differences between the parties, the parties in said suit entered into a new lease, and being the lease heretofore referred to and dated the 9th day of November, 1914, and for and in consideration of said lease the suit to require production was dismissed. The plaintiffs were also paid $100 cash and the stipulations and terms as to development were embodied in the lease that we have heretofore stated. The former lease had a term running for 20 years, while in the second lease the term was reduced to three years. Copies of the first and second leases were attached to the petition of the plaintiffs in the instant suit, and to said petition the defendant demurred, and the demurrer was overruled; whereupon the defendant filed its answer, admitting the allegations of the plaintiffs in their petition: and to meet the contention of the plaintiffs that it had failed to comply with the condition as to production, alleged the following:

"Defendant has fully complied with the covenants, promises and agreements contained in said oil and gas mining lease made obligatory upon the lessee and said oil and gas mining lease is an executed contract.

"The natural gas which is now being produced on said leased premises by the defendant and which was being found and being produced on the 9th day of November, 1917, and at all times since, was and is being found and produced by the defendant, the Blackwell Oil & Gas Company, on said leased premises, under the terms and conditions of said oil and gas mining lease which was made and executed on the 9th of November, 1914; and thereby said oil and gas mining lease has been continued in force and effect, and the same is now in full force and effect and a legal, binding, valid and subsisting oil and gas mining lease between the parties to said lease.'

The cause went to trial, the plaintiffs introduced their evidence, and defendant demurred to the plaintiffs' evidence, and the trial court sustained said demurrer. Plaintiffs filed a motion for a new trial, the same was overruled, and notice of appeal was given and the cause was appealed to this court.

The contentions of the parties herein is narrowed down to one proposition: Did the failure of the defendant, which failure is admitted, to develop another gas well upon said premises, under the developing provisions of the second contract within the term of three years, constitute a forfeiture of said contract. or did the well, as contended by the defendant, that had been brought in under the old contract answer for and constitute, under the provisions of the new contract as to production, an executed contract? In other words, the contention of the plaintiffs is that the second contract abrogated the provisions of the old contract and constituted an entirely new contractual relation between the parties. The defendant contends that the two contracts are to be taken together, and supplement each other, and that the old production under the old contract answered for the production required under the new contract. The following provision of the second contract makes reference to the first contract. and also makes reference to the well drilled under the old contract,

"It is hereby expressly recited that the party of the second part now holds a gas and oil lease on said premises by virtue of a lease and grant executed and delivered by James C. Carder, and Ida Carder, husband and wife, unto the Blackwell Brick, Tile & Gas Company, a corporation of Blackwell, Oklahoma, of the date of the 7th day of August, 1909, and which was filed for record on the 9th day of August, 1909, at the hour of 9:40 o'clock a. m. and recorded in book seven, Miscellaneous records, page 407, in the office of the register of deeds of Kay county, Oklahoma. and which said gas and oil lease has been duly and legally sold, assigned and transferred to the Blackwell Oil & Gas Company, and said corporation is now the owner and holder of said oil and gas lease and all the rights granted

under said lease. That under and by virtue of said lease one well for gas has been drilled on said premises and the rental payment for said well has been paid up to and including the first day of March, 1915. That as a part of the consideration of this lease it is hereby expressly agreed between the parties hereto that said gas well shall be and remain the property of the party of the second part, and the party of the second part shall retain the ownership of all of its said property now located on said land and that this lease shall take the place of and stand in lieu of said prior lease."

We think that the plain and manifest purpose of this provision was for the benefit of the defendant company and to protect them in their property rights in the well produced under the first contract, and by its plain terms it expresses no other purpose, and the plaintiffs in their petition so interpreted and recognized this fact, and in their prayer by asking the court to recognize this provision and set aside such quantity of said land as is reasonably necessary to permit the use and operation of said well. In this we think they did right.

The following provision makes reference to the prior suit to require production and, as we think, expresses the purposes of entering into the second contract:

"Also, it is hereby expressly recited that an action is now pending in the district court of Kay county, state of Oklahoma, wherein the parties of the first part are plaintiffs and the said Blackwell Oil & Gas Company, a corporation, is defendant, in which said action plaintiff seeks further development of said premises and other relief, as prayed for in said petition of plaintiff. Now it is agreed in consideration of the covenants and promises in this contract contained that said action aforesaid shall be dismissed with prejudice at the cost of the defendant and said action is hereby fully settled by the terms of this lease and as a part of said settlement the sum of one hundred dollars shall be paid, to the parties of the first part by the party of the second part, the receipt whereof is hereby expressly acknowledged by said parties of the first part."

The above provision is plain to this court and its purpose is manifest, and referring to the former suit as being one to require further production, it then states the reason for the dismissal in the following language:

"Now it is agreed in consideration of the covenants and promises in this contract contained that said action aforesaid shall be dismissed with prejudice at the cost of the defendant and that said action is hereby fully settled by the terms of this lease."

What covenants and promises do they refer to in the above quoted language? They must be the covenants and promises looking to future development and production as provided in the second lease, and that the purposes sought in the former suit are provided by the terms of the second lease, and the second lease answers in lieu of a judgment requiring future development as asked for in the former suit.

We think that the trial court committed error in sustaining the demurrer to the plaintiffs' evidence, and under the state of this record, as shown by the contracts and pleadings and the admissions therein and the uncontradicted evidence, that the plaintiffs were entitled to have judgment canceling said lease and the relief prayed for in their petition.

The new contract, by its plain language, states that it takes the place of and stands in lieu of the prior lease. If it takes the place of and stands in lieu of the prior lease, then whatever terms it embraces would constitute new and future obligations. If this proposition is true, then we cannot understand how it can be contended that the executed parts of the prior contract should count in making the terms of the new contract executed, and even if doubt would be expressed as to whether such is the correct conclusion, we think that the circumstances under which the second contract was entered into indicated that the new contract is a contract for future production. There had been a suit commenced by the plaintiffs to require additional production, and as a result of the new contract, the suit to require production was dismissed, and special reference to the said suit and the reason for such dismissal is made in the last quoted portion of said second lease. When any doubt arises relative to the interpretation of contracts and the force and effect to be given to same, we have a right to take into consideration the surrounding circumstances, and to place ourselves in the position of the parties at the time of entering into the contract.

The defendant, in its brief, suggests that there is no uncertainty in the contracts, and hence contends that no rules of interpretation are needed. We will agree with their contention that the terms of the second contract are plain. The only uncertainty that arises comes from the effort of the defendant itself to bring into the consideration of this question what was done under the old contract and to interpret the reference in the second contract to the first contract in such a manner as to acquit the defendant of

a breach under the new contract. This we hold to be untenable.

The following is part of the syllabus in Withington v. Gypsy Oil Co., 68 Oklahoma, 172 Pac. 634:

"Where the meaning of the language of a contract is doubtful and the same is fairly susceptible of two constructions, that construction must be preferred which makes it fair and such as prudent men would naturally execute in preference to a construction that would make it inequitable, or such as reasonable men would not be likely to enter into.

"The intention of the parties must be deduced from the entire agreement, not from any part or parts of it, and where a contract has several stipulations, the intention of the contracting parties is not expressed by any single clause or stipulation, but by every part and provision in it, which must all be considered together and so construed as to be consistent with every other part."

The following is from the body of the opinion in Withington v. Gypsy Oil Co., supra:

"In arriving at their meaning, we must bear in mind that the primary object of all rules of interpretation and construction is to arrive at and give effect to the mutual intent of the parties, as expressed in the contract, and that, where a contract is ambiguous the true intention of the parties, if it can be ascertained from the contract, prevails over verbal inaccuracies, inapt expressions, and the dry words of the stipulation. We must also bear in mind that it is the duty of the court to place itself, as far as possible, in the position of the parties at the time the contract was entered into, then to consider the instrument itself as drawn, its purposes and the circumstances surrounding the transaction, and, from a consideration of all these elements, to determine upon what sense or meaning of the terms, used their minds actually met."

The same rule that applies to interpretations of the provisions of deeds would apply to the interpretation of leases. The following is section 217, 18 C. J., pages 260-2:

"Where the language of a deed is ambiguous, the intention of the parties may be ascertained by a consideration of the surrounding corcumstances existing at the time of its execution. For this purpose the court will place itself as nearly as possible in the position of the parties when the instrument was executed. But the object of the admission and consideration of evidence of surrounding circumstances is to aid the court in construing the language of the deed and ascertaining the grantor's intent therefrom, and the surrounding circumstances will not be permitted to place a construction upon the deed inconsistent with the words used so as to add to or detract from or alter the intent. Hence, where the language of the deed is plain, certain, and unambiguous, the surrounding facts and circumstances will not be considered. Where the language of the deed is ambiguous, the court may consider its origin and the sources of its derivation, all the attendant surrounding circumstances or the existing state of facts, the situation of the parties and of the property or the condition or state of things granted at the time, the state of the country, the relationship of the parties, the state of the law at the date of the deed, previous agreements which the deed is to carry into effect, the object to be subserved, the person by whom the deed is drawn, and generally all sources of inquiry naturally suggested by the description, or which may have acted upon the minds of the parties, are open to inquiry within the limits of the rules relating to parol evidence in such cases. In this connection it may be noted that a number of facts all pointing the same way may have an effect which no one of them would have had alone. The deed, however, must receive its construction as of its date and the date of its delivery, and not in the light of subsequent events. Hence, a grantor cannot by creating practical difficulties after he has made a grant that is free from them, defeat the grant or influence its legal construction."

There is no question involved in this case of implied forfeiture. This is admitted by both parties to the suit, and the whole question devolves upon the interpretation of the contract; and the defendant admits that if the production under the first contract does not answer for and in lieu of new production, that under the law and the facts, they have forfeited their second lease. The last portion of one of the provisions of the second contract reads as follows:

"* * * No implied covenant or covenants of development for gas shall obtain but the express covenants contained in this lease relating to development for gas shall be final and exclusive between the parties hereto."

This provision seems to recognize that there was an expressed covenant for development, and constitutes a second recognition in the contract itself. There is another recognition in the second contract of the provision as to the production in the following provisions:

"It is hereby expressly stipulated that no gas well now located on adjoining lands to the premises herein leased shall be required to be offset on the premises here leased,

otherwise than by the drilling of the one additional well or the payment made in lieu thereof as provided in this lease."

It is true, as is argued by defendant in its brief, that plaintiffs, for their contract, received $100 cash and the provision as to the putting down of a second well or the payment of $100 in lieu thereof, which is more than they procured under the old contract; but it must be borne in mind that a suit under the old contract had been begun to require additional development. And as a result of the dismissal of said suit, this second contract was produced in which is embraced a development provision which standing alone and without reference to the prior contract and a completed gas well completed during the life of the first contract, would require production within the term of three years or there would be a forfeiture of the second contract. And whether the defendant admits this or not, the same is true, and requires no citation of authority. We think this proposition is admitted by defendant in its brief.

If this provision in the second contract as to production is not a new obligation requiring future production, and the old well executed the provision as to the future development, why was the development provision embodied in the second contract at all? This is a natural inquiry.

The defendant, in its brief, admits that, under the provisions of the second contract, it could not defer development as long as it wished and without end by paying the rental provided; then it must follow that future development was contemplated. The express terms of the second contract clearly and manifestly express that purpose. The presumption is that all oil and gas leases are made in contemplation of production.

In the case of New State Oil & Gas Co. v. Dunn et al., 75 Okla. 141, 182 Pac. 514, the following language is used:

"Ordinarily oil and gas leases are executed for the purpose of exploring and operating for oil and gas, and where its terms will permit it, under the rules of law, such lease will be construed so as to promote development and prevent delay and unproductiveness."

Our conclusions are that the terms of the second contract are the ones that were operative and controlling and bound this defendant to develop and bring additional production, and that the defendant has failed to procure production within the term as required, and that it has therefore forfeited

said contract. The same was a condition subsequent, and under the admitted facts of this record it has failed to comply, and said lease is held to be forfeited.

The plaintiffs, in their prayer, ask for judgment canceling said lease except what was sufficient to protect and operate the well produced under the first lease. This seems to be within the power of this court or the trial court. The following is a portion of the language used by Mr. Justice Rainey in the case of Pelham Petroleum Co. v. North, 78 Okla. 39, 188 Pac. 1069:

"A court of equity has the power to conform its decrees to the varying circumstances of each particular case, and if the evidence shows that a part of the leased premises under an oil and gas lease has been properly developed with reasonable diligence by the lessee, and other parts have not, the court may cancel the lease as to the undeveloped portion and permit the lessee to continue to operate the developed part thereof."

To the same effect is the case of Coffinberry v. Sun Oil Co. (Ohio) 67 N. E. 1069.

The judgment of the trial court is, therefore, reversed, and remanded, with directions to enter judgment for the plaintiffs canceling said lease and quieting title in the plaintiffs as to the defendant, and with the further direction to reserve to the defendant a right to the use and occupancy for the purpose of operating the gas well on said premises that is reasonably necessary for the practical operation of the same.

HARRISON, C. J., PITCHFORD, V. C. J., and JOHNSON, MILLER, KENNAMER, and NICHOLSON, JJ., concur; KANE, J., dissenting.