Note.—See under (1, 2) 28 Cyc. p. 1011 (1296 Anno.); (3) 28 Cyc. p. 1013, (1296 Anno); (4) 28 Cyc. p. 1173.

---

## DONALDSON et al. v. JOSEY OIL CO.

No. 14806—Opinion Filed Nov. 12, 1924.

Rehearing Denied Jan. 27, 1925.

### 1. Trial—Demurrer to Evidence in Equity Case—Effect.

A demurrer to the testimony is not authorized under the practice in this state in an equity case, but where such practice is followed, a demurrer to the testimony will be treated by the court as a motion by the defendant for judgment for defendant upon the testimony as produced by the plaintiff.

### 2. Appeal and Error—Sufficiency of Evidence—Review of Equity Case.

Where, in an action of purely equitable cognizance, tried to the court without the intervention of a jury, the finding of the court is not clearly against the weight of the evidence and comes within the principles of equity, the decision of the lower court should be and must be affirmed, but, if the court, after weighing the evidence, finds that the judgment of the trial court is clearly against the weight of the evidence, the judgment will be reversed.

### 3. Oil and Gas—Leases—Construction to Promote Development.

Ordinarily oil and gas leases are executed for the purpose of exploring and operating for oil and gas, and where its terms will permit it, under the rules of law, such lease will be construed so as to promote development and prevent delay and unproductiveness.

### 4. Same—Reasonable Diligence in Operations Required.

Where the object of the operations contemplated by an oil and gas lease is to obtain a benefit or profit for both lessor and lessee, neither is, in the absence of a stipulation to that effect, the arbiter of the extent to which, or the diligence with which, the operation shall proceed; but both are bound by the standard of what, in the circumstances, would be reasonably expected of an operator of ordinary prudence, having regard to the interest of both.

### 5. Same—Forfeiture of Lease for Breach of Implied Covenant of Diligence.

A court of equity will decree a forfeiture of the whole, or part, of an oil and gas lease on account of a breach of an implied covenant to diligently operate and develop the property when such forfeiture will effectuate justice. The granting of such relief depends upon the facts and circumstances surrounding each particular case.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Payne County; C. C. Smith, Judge.

Action by Wm. F. Donaldson and Hattie Donaldson against the Josey Oil ompany, a corporation, for the cancellation of an oil and gas lease upon 130 acres of land in Payne County. Judgment for defendant on demurrer to evidence. Plaintiffs bring error. Reversed.

Wilcox & Swank, for plaintiffs in error.

Biddison & Campbell and C. H. Lowry, for defendant in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Payne county by Wm. F. Donaldson and Hattie Donaldson, plaintiffs in error, hereinafter called plaintiffs, against the Josey Oil Company, a corporation, defendant in error, hereinafter called defendant, to cancel an oil and gas lease upon approximately 130 acres of land in Payne county for failure to develop the land for oil and gas, and for failure to properly drill, shoot, and care for the well, drilled by defendant, and to care for the production of oil and gas from said well. The lease was originally executed by plaintiffs on the 18th day of October, 1915, to the Roma Oil Company, and by it transferred to the defendant, Josey Oil Company. Said oil and gas mining lease was given for the term of three years or as long thereafter as oil and gas, or either of them, were produced from said land by the lessee. Plaintiffs were to receive an one-eighth royalty from all oil produced, $500 per year from each gas well where only gas was found, while the same was used off the premises, and $25 per year for gas produced from any oil well used off the premises, and said lease contained the usual conditions and stipulations contained in the ordinary form of such lease.

The cause, being an equity case, was tried to the court without the intervention of a jury, and at the close of the evidence on part of the plaintiffs, the defendant interposed a demurrer to the evidence, which was sustained by the court, and judgment entered in favor of the defendant and against the plaintiffs, from which judgment of the court plaintiffs appeal.

It will be necessary to examine briefly the evidence introduced by the plaintiffs. The lease in controversy was executed on the 18th day of October, 1915. Nothing was done under said lease toward exploring the lands for oil and gas until some time in March, 1918, at which time the defendant, through its representative, R. A. Josey, principal stockholder and owner of the company, sought to have an extension of time to drill the first well, and failing to secure said extension, the plaintiffs offered to show that the said R. A. Josey became very angry and stated: "I will deal in cold blood with you from this on. I will drill this one well and hold the lease indefinitely," which statement was improperly excluded by the court and exception reserved by the plaintiffs; that immediately thereafter the defendant commenced to drill a well on the premises; that the defendant lost part of its drilling tools in the well and could not fish it out and drilled by the tools, so lost, thereby making a crooked hole and was unable to seat the casing, on this account, so that it would cut off the water properly; that it first drilled into a gas sand, which, by actual measurement, produced 3,500,000 cubic feet of gas per day, which gas was allowed to go to waste and was not attempted to be preserved; that oil sand was reached, which produced an initial production of 60 barrels per day, actual measurement; that the well was shot for a gas well with three or four quarts of nitro-glycerine; that on account of the water being mixed with the oil and gas, it produced an inferior grade of oil, which the defendant attempted to take care of by virtue of dirt vats or tanks, thrown up by teams and scrapers, which tanks were so constructed that the banks would break and large quantities of the oil were allowed to escape into the river; that, in the operation of this well, according to the production account introduced in evidence, there were months intervened, during which no oil was obtained from the well; that several hundred feet of pipe and what is known as "jars" and rods were dropped into the well by defendant, which were never removed and part of which no attempt was made to remove until after this action was brought; that these conditions existed from August 25, 1918, the date

the well was brought in, until after this action was brought; that there was an offset well drilled on adjoining land to the lands covered by this lease; that plaintiffs demanded orally and in writing that the defendant should either drill other wells or surrender the lease, which defendant failed or refused to do. The account of oil runs shows that during 1919, 1920, and the first quarter of 1921, oil was selling at the rate of $2.25 to $3.50 per barrel. This is substantially the evidence in the case.

The rule to be applied here upon demurrer to the evidence is:

"A demurrer to the testimony is not authorized under the practice in this state in an equity case, but where such practice is followed, a demurrer to the testimony will be treated by the court as a motion by the defendant for judgment for defendant upon the testimony as produced by the plaintiff.

"In an equity case, where the defendant has demurred to the testimony of the plaintiff and the court has rendered judgment for the defendant after weighing the evidence, the judgment of the trial court will not be reversed unless against the clear weight of the evidence."

But the converse of this rule is equally true, that where, as in this case, in our opinion, the judgment of the trial court is clearly against the weight of the evidence and does not come within the principles of equity, the judgment of the lower court should be and must be reversed.

We are forced to conclude from the evidence that the well was improperly drilled; that the products from the well, both oil and gas, were allowed to go to waste; that the well was allowed to fill up to a certain extent with the pipe and tools, and was allowed to remain in this condition during the entire time before the bringing of this action, and that the conduct of the defendant in this case, in the handling of this lease and the attempted production of oil and gas, was not in accordance with the implied covenants of the lease, and the lease was not handled by defendant in the interest either of itself or the plaintiff lessors. The gauge of the well for gas and for oil shows that it was a productive well; that, during the four years from the completion of the well until the bringing of this action, the price of oil was higher than it ever has been known in this state, and, measured by the quantity of the production of this well and by the price of the products, this lease should and would have been a large and profitable producer of oil and gas if properly handled.

Oil and gas leases in this jurisdiction are

construed strongly against the lessee and in favor of the lessor.

In the case of New State Oil & Gas Co. v. Dunn et al., 75 Okla. 141, 182 Pac. 514, Chief Justice Owen said:

"Ordinarily oil and gas leases are executed for the purpose of exploring and operating for oil and gas, and where its terms will permit it, under the rules of law, such lease will be construed so as to promote development and prevent delay and unproductiveness." Citing: Paraffine Oil Co. v. Cruce, 63 Okla. 95, 162 Pac. 716; Parish Fork Oil Co. v. Bridgewater Gas Co., 51 W. Va. 583, 42 S. E. 655.

This court further held:

"Without an express covenant to develop within a certain period, it has been held the law will imply a covenant to develop within a reasonable time, and forfeiture may be declared for failure to so develop." Citing a long list of authorities.

This court, in the case of Indiana Oil, Gas & Development Co. v. McCrory et al., 42 Okla. 136, 140 Pac. 610, in an opinion by Mr. Commissioner Galbreath, which was quoted with approval by Justice Rainey in a subsequent opinion by this court, said:

"Where the object of the operations contemplated by an oil and gas lease is to obtain a benefit or profit for both lessor and lessee, neither is, in the absence of a stipulation to that effect, the arbiter of the extent to which, or the diligence with which, the operation shall proceed; but both are bound by the standard of what, in the circumstances, would be reasonably expected of an operator of ordinary prudence, having regard to the interest of both."

In the same opinion the court said:

"A court of equity will decree a forfeiture of an oil and gas lease on account of a breach of an implied covenant to diligently operate and develop the property when such forfeiture will effectuate justice. The granting of such relief depends upon the facts and circumstances surrounding each particular case."

To the same effect are the cases of Carder et al. v. Blackwell Oil & Gas Co., 83 Okla. 243, 201 Pac. 252, and Blackwell Oil & Gas Co. v. Whitesides, 71 Okla. 41, 174 Pac. 573.

In the exercise of its equity power the trial court, or this court, could cancel the entire lease or it may, according to the circumstances of each particular case, where it is shown that part of the leased premises has been developed with reasonable diligence of the lessee and other parts have not, cancel the lease as to the undeveloped portion and permit the lessee to continue to operate the developed part thereof, and where, as in this case, we hold that the object of the operations contemplated by the oil and gas lease is to obtain a benefit or profit for both lessor and lessee, neither is, in the absence of a stipulation to that effect, the arbiter of the extent to which, or the diligence with which, the operations shall proceed, but both are bound by the standard of what, in the circumstances, would be reasonably expected of operators of ordinary prudence, having regard to the interest of both. This, upon the authority of Carder v. Blackwell Oil & Gas Co., 83 Okla. 243, 201 Pac. 252, Pelham Petroleum Co. v. North, 78 Okla. 39, 188 Pac. 1069, and Brewster v. Lanyon Zinc Co., 140 Fed. 801, 72 C. C. A. 213.

In this case, it would be manifestly unfair to permit the defendant, under the circumstances shown by the evidence here, to hold the 130 acres of plaintiffs under the claim that it had drilled the well and operated the same under the conditions as disclosed by the proof in this case. If the defendant be content with the one well, this court, or the trial court, in the exercise of its broad equity powers, should decree it a small area of land upon which this well is located sufficient to protect the well and allow the defendant to operate this one well, and release the other so that these plaintiffs could realize some profit from the balance of the acreage, which was proven to be productive both in oil and gas, and of which they are deprived by the action of the defendant in this case. The defendant is doing exactly what its representative, R. A. Josey, said he would do, drill the one well and hold the entire acreage indefinitely, which testimony, under the circumstances of this case, was admissible as an expressed intent amounting to a threat, and, in our opinion, the court committed error in excluding the same, as this statement serves to show that it was not the intention of the defendant to explore this land further, notwithstanding that it was a productive lease and the price of oil during the time that it has failed to drill further was the highest that it ever has been known in this state.

This court, in numerous cases, some of which are cited above, has held this right to be vested in the courts of this state in the exercise of its equity power, and the plaintiffs are not held to an action in damages but may sue to cancel the entire lease, and if the chancellor should find that under the circumstances the entire lease should not be canceled on account of the one well, then it should decree a cancellation as to the

undeveloped portion, and, in our opinion, under the circumstances in this case, a decree of this kind and character, under the evidence demurred to, would be just, equitable, proper, and right.

In view of the conclusions heretofore stated in this opinion, we are forced to conclude that the court committed reversible error in sustaining the demurrer filed by the defendant to the plaintiffs' evidence, and the judgment of the lower court should be and is hereby reversed with instructions to the trial court to overrule defendant's demurrer to the evidence and take such further action not inconsistent with this opinion.

By the Court: It is so ordered.