Note.—See under (1, 2) 30 Cyc. pp. 412, 594; anno. 18 L. R. A. (N. S.) 1076; 20 R. C.

L. p. 849; 3 R. C. L. Supp. p. 1104; 4 R. C. L. Supp. p. 1380; 6 R. C. L. Supp. p. 1238. (3, 4) 5 C. J. p. 922, §83. (5) 36 Cyc. p. 919 (Anno). (6) 4 C. J. p. 1164, §3181.

---

## SCOTT v. PRICE et al.

No. 16600—Opinion Filed March 16, 1926.

Rehearing Denied Jan. 25, 1927.

**1. Pleading—Complete Amended Petition as Abandonment of Prior Averments.**

The filing of an amended petition which is complete in itself, and does not refer to the original petition or any prior amendment, is an abandonment of all prior averments not contained in such amended petition.

**2. Oil and Gas—Abandonment of Lease—Intent.**

The abandonment of an oil and gas mining lease rests upon the intention of the lessee to relinquish the premises.

**3. Same—Forfeiture of Lease for Failure to Operate.**

Forfeiture of an oil and gas mining lease will be decreed for breach of an implied covenant to diligently operate the property when such forfeiture effectuates justice.

**4. Same—Forfeiture in Part Where Lease Developed in Part.**

Where part of the lease premises has been developed and operated with reasonable diligence by drilling and operating one well, and the other portion of the lease has not been and cannot be developed by the lessee, the lease will be canceled as to the undeveloped portion for breach of the implied covenant to diligently operate the property, and permit the lessee to continue to operate the developed portion where reason and justice require it.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Murray County; A. C. Barrett, Judge.

Action by Ellis Price and Nina Price against W. J. Scott. Judgment for plaintiffs, and defendant appeals. Remanded, with directions.

H. B. Martin and H. W. Broadbent, for plaintiff in error.

Young, Haste & Powell, W. G. Long. P. G. Moore, and Bowling & Farmer, for defendants in error.

Opinion by RAY, C. This is an action by Ellis Price and Nina Price, husband and wife, against William J. Scott to cancel an

oil and gas lease executed by plaintiffs to the defendant, and for an accounting of the royalties accrued and accruing under the terms of the lease. The lease was executed December 26, 1916, for a period of five years, "and as much longer as oil, gas or either of them shall be produced from said lands by lessee in paying quantities." By the terms of the lease the lessee was to deliver to the lessor a one-tenth part of all oil produced and saved from the premises as royalty, free of cost to the lessor, in the pipe line to which the well might be connected, or, at the lessee's election, to pay the lessor for the royalties, the market price prevailing the day the oil was run into the pipe line or run into storage tanks.

The defendant joined issue by answer and cross-petition, and prayed judgment for certain sums alleged to be due from the plaintiffs to the defendant. Judgment was for plaintiffs canceling the lease, for possession, and for an accounting for the royalties. From this judgment the defendant, William J. Scott, has appealed.

No question arising upon the defendant's cross-petition is presented in his brief. The findings of fact and conclusions of law, in so far as they relate to or affect the question here under consideration, are as follows:

"(1) That on the 26th day of December, 1916, the plaintiffs, for a consideration of $1 cash in hand paid, and the covenants and agreements contained therein, to be kept and performed by the defendant, made, executed and delivered to the defendant, a certain oil and gas lease on the following described lands: (description of lands), under which said lease the defendant should have and hold said lands and all the rights and privileges granted thereunder for the term of five years from the date thereof, and as much longer as oil, gas or either of them should be produced from said lands in paying quantities.

"(2) That thereafter the defendant went into possession of said lands under the terms of the lease and commenced drilling and developing operations; that in the month of October, 1919, sand was encountered in said well on said leased land at a depth of 1,265 feet; that said well produced a very small quantity of gas, and produced a substance or liquid which might be denominated liquid asphalt. That the substance so produced was heavy and tenacious and incapable of being handled in pipe lines; noncombustible, and which had to be baled from the well. That said well would produce a maximum of 50 barrels of this substance per day, its exact capacity for production not having been definitely determined; that the market value of this substance at the well, when a market can be obtained therefor is 50 cents per barrel; that the value of the prod-

uct so obtained at said price is insufficient to pay the expenses of production.

"(3) That the production of said well from the month o. October, 1919, when said well was brought in. up to the date of trial on November 7, 1924, was 700 barrels, a portion of which was on the premises at said last mentioned date.

(4) That the defendant has been unable from the time of the discovery of said well up to the time of the trial to find a market for the output of the well, but has only been able to sell same in comparatively small quantities and at irregular intervals. That defendant has diligently sought a market therefor, and has expended considerable sums of money and a large amount of time in experimenting therewith and advertising the same.

"(5) That the defendant has not operated said well regularly and constantly since its discovery, but has operated the same intermittently for short periods when it was possible to dispose of the product, and has produced and sought to produce only such quantities as were necessary in order to consummate the sales which he was able to make and for the purposes of advertisement and experiment.

"(6) That the defendant has not paid to the plaintiffs any sum for rental or royalty since the operation of said lease begun, except the $1 paid at the time of the delivery of the lease, and the sum of $2 at another time, when plaintiffs sold for defendant a small quantity of the product locally.

"(7) That the defendant has expended large sums of money in drilling the well and in making permanent improvements on the lease, including a pipe line from the well to the railway switch, about a quarter of a mile away, in obtaining the building of said switch and erecting a dwelling and other buildings.

"(8) That the defendant has resided on and been in possession and control of the premises constantly since the time of the execution of the lease. * * *

"Conclusions of Law.

"(1) The court finds that the oil and gas lease involved in this suit expired by its own limitations on the 26th day of December, 1921, oil and gas, or either of them not having been discovered in paying quantities on said lease within the period prescribed by the terms of the lease.

"(2) That said lease is subject to forfeiture by reason of the breach by defendant of the express and implied covenants thereof to diligently operate and develop same.

"(3) That the defendant has not abandoned said lease. * * *

"(7) That judgment should be rendered

for the plaintiffs and against the defendant canceling said lease and removing the same as a cloud upon plaintiff's title, for the restitution of said lands and premises to the plaintiffs, and for an accounting."

On these findings of fact and conclusions of law judgment was for plaintiffs canceling the lease, for possession, and for an accounting of the royalties.

The contention of the defendant, that the conclusion of the trial court that the lease expired by its own limitations was not within the issues, must be sustained. Plaintiffs, to sustain the conclusion of the trial court that the lease expired by its own limitations for failure to discover oil or gas in paying quantities within the life of the lease, say that the original petition, construed together with certain allegations of the amended petition, sufficiently alleged that oil or gas was not discovered in paying quantities during the life of the lease to justify the cancellation of the lease upon that ground. The difficulty of that argument is that the amended petition, on which the case was tried, was complete in itself and contained no reference to the original petition. The effect of the original petition was destroyed by the filing of the amended petition, which was complete in itself and did not refer to or adopt the original as a part of it. Garr Scott & Co. v. Rogers, 46 Okla. 67, 148 Pac. 161. In the amended petition it was alleged, in substance, that within the life of the lease the defendant put down a well to a depth of about 1, 265 feet, at which point he encountered a sand which would have produced, if the same had been properly developed, a product which might be denominated oil, but which was of a heavy tenacious character; that the product found in the well was of such character that the same could not be handled through a pipe line, and it thereby became the duty of the defendant to run the product into storage tanks, which, by the terms of the contract and the custom of oil fields, it was the duty of the defendant to construct; that it became the defendant's duty, when the product was stored in the tanks, to make settlement and payment to the plaintiffs on the 15th day of each, succeeding month, and place the product in storage tanks; that the defendant had violated the terms of the contract in this:

"* * * That defendant has failed and refused and still fails and refuses to take from said well the product thereof and store the same in accordance with the terms of said contract, and to pay these plaintiffs the royalty provided for in said contract. That the defendant has refused and still refuses to take from said well said product in suf-

ficient quantities and at such times as to render the product of said well a paying product. They further state that by said refusal to take from said well the oil therein and to market the same, and by his refusal to account to these plaintiffs for their royalty thereon, he has failed to comply with one of the conditions precedent to the continuation of said lease beyond the period of five years from the date thereof, and that thereby said lease has expired by its terms, and that the defendant is at present and has been since the 26th day of December, 1921, a trespasser upon said lands, holding the same wrongfully, illegally, and in violation of the express terms of his said contract, against the rights and wishes of these plaintiffs."

It was further alleged that since the completion of the well, the defendant, Scott, had taken therefrom about 500 barrels of the approximate value of $5,000, and that by reason thereof the plaintiffs are entitled to the sum of $500 as royalty thereon, and that, if the well had been worked with reasonable diligence at all times since its completion, no less than 65,700 barrels would have been produced; that it was the intention of the parties in the execution of the lease contract, that the property was to be developed as oil property for the benefit of both the lessor and the lessee, but that the defendant had at all times neglected, failed, and refused to operate the property in such way as to take therefrom the oil and gas found thereunder, but had only sought to take therefrom such amount as suited his purpose, and in such quantities as to enable him to claim that plaintiffs were entitled to no part thereof by reason of his large expenditure in the production of the oil, it being the purpose of the defendant by such method to defraud the plaintiffs of their royalty; that the defendant had at all times, instead of undertaking to develop the property and increase the production, sought and still seeks to reduce the production for the purpose of defrauding the plaintiffs.

The parties are agreed that the product discovered, which appears to be something in the nature of asphalt, is not such product as the parties had in mind at the time of the execution of the lease, but by these allegations of the amended petition, which contained no reference to the original petition, we think the plaintiffs abandoned their previous contention that oil or gas in paying quantities was not discovered within the life of the lease. It is therefore held that the conclusion of the trial court that the lease expired by its own limitations on the 26th day of December, 1921, for the reason that oil or gas in paying quantities had not been discovered within the period prescribed

by the lease, was not within the issues as defined by the pleadings on which the case was tried.

Neither can the plaintiffs' contention that the defendant, Scott, had abandoned the lease be sustained. The trial court found that it had not been abandoned. An abandonment rests upon the intention of the lessee to relinquish the premises. Thornton on the Law of Oil and Gas (3rd Ed.) section 155:

"To constitute 'abandonment' in respect of property, there must be a concurrence of the intention to abandon, and an actual relinquishment of the property, so that it may be appropriated by the next comer. In determining whether one has abandoned his property rights, the intention is the first and paramount object of inquiry; for there can be no abandonment without the intention to abandon."

The rule above stated is sustained by the authorities generally.

This leaves but the single question for consideration: Was there such a failure on the part of the defendant, Scott, to operate the lease as to work a forfeiture?

It is well settled that the court will decree a forfeiture of an oil and gas lease on account of breach of implied covenant to diligently operate the property, when such forfeiture would effectuate justice. The granting of such relief, however, depends upon the facts and circumstances surrounding the particular case. Pelham Petroleum Co. v. North, 78 Okla. 39. 188 Pac. 1069. In the body of the opinion in that case it was said:

"As was well said in the case of Brewster v. Lanyon Zinc Co., supra (140 Fed. 801), the object of the operations is to obtain a benefit or profit for both lessor and lessee, and in the absence of some stipulation to that effect. neither is made the arbiter of the extent to which, or the diligence with which, the operations shall proceed, and both are governed by the standard of what is reasonable. and there may, therefore, be a breach of the covenant for the exercise of reasonable diligence, although the lessee is not guilty of fraud or bad faith. In this connection we wish to say that we are in complete accord with the views of that learned court relative to the degree of diligence incumbent upon the lessee so happily expressed in the following language:

" 'But, while this is so, no breach can occur save where the absence of such diligence is both certain and substantial in view of the actual circumstances at the time, as distinguished from mere expectations on the part of the lessor and conjecture on the part of mining enthusiasts. The large expense incident to the work of exploration and de-

velopment, and the fact that the lessee must bear the loss if the operations are not successful. requires that he proceed with due regard to his own interests, as well as those of the lessor. No obligation rests on him to carry the operations beyond the point where they will be profitable to him, even if some benefit to the lessor will result from them. It is only to the end that the oil and gas shall be extracted with benefit or profit to both that reasonable diligence is required. Whether or not in any particular instance such diligence is exercised depends upon a variety of circumstances, such as the quantity of oil and gas capable of being produced from the premises, as indicated by prior exploration and development, the local market or demand therefore, or the means of transporting them to market, the extent and results of the operations, if any, on adjacent lands, the character of the natural reservoir—whether such as to permit the drainage of a large area by each well—and the usages of the business. Whatever, in the circumstances, would be reasonably expected of operators of ordinary prudence, having regard to the interests of both lessor and lessee, is what is required. A plain and substantial disregard of this requirement, constitutes a breach of the covenant for the exercise of reasonable diligence, which, as before shown, is also made a condition of the lease under consideration.' "

We think the findings of fact made by the trial court are sustained by the evidence, but a proper disposition of the case requires the consideration of the evidence. The evidence shows that the product of the well is not of that character which can be disposed of on the market to those dealing in and transporting petroleum through pipe lines. The exact character of the product is not made clear, but the parties are agreed that it is something like asphalt. The evidence shows that it makes a good quality of roofing and may be manufactured into paint suitable for painting such things as pipe lines. Since the product was discovered the lessee has built two earthen tanks and one wooden tank of the approximate capacity of 500 barrels each, caused a switch to be built at the railway, approximately one-fourth of a mile from the well, and built a pipe line from the well to the switch at a cost of about $4,000: has installed pumps for pumping water at a cost of about $1,600, and has spent a great deal of·time and money in trying to ascertain the different uses to which the product might be put and to secure a market. The evidence shows that the lessee. in his efforts to operate the well and establish a market for its product, had not only exahusted his own resources, but borrowed all the money he could for that purpose, with the result, however, that the enterprise, in so far as securing a market

is concerned, may be said to be in an experimental stage.

For a considerable portion of the four years, which had elapsed between the discovery of the product and the trial, the plaintiffs had co-operated with the lessee in his attempt to operate the well and find a market for its product. Plaintiff, Ellis Price, at different times, worked for the lessee, Scott, in attempting to operate the lease and in laying the pipe line. We think the evidence shows the good faith of Scott in his attempt to operate the lease, and that he has done everything in his power within his resources to find a market for the product. But it may also be said that the operation of the lease has been a loss to the lessee, and has resulted in no profit whatever to the plaintiffs, owners of the land.

The evidence further shows the lessee is still endeavoring to find a market for the product, with the hope that the enterprise may finally prove a profitable one, or that he may recoup at least a part of the large expenditures made in sinking the well and attempting to operate it and find a market for the product. The evidence does not disclose any purpose or intention on the part of the lessee to drill other wells upon the lease. In the circumstances of the case it is neither reasonable, just, nor equitable to permit the lessee to hold the lease covering some 300 or 400 acres to the exclusion of the right of the plaintiffs to lease to other parties, who might be in position to make further discovery and development. It seems to us also unjust, unreasonable, and inequitable to deprive the lessee of the right to further operate the well and develop a market for the product which would be the effect of a forfeiture of the lease. Reason and justice dictate that the lease be canceled except as to that portion of the lease necessary for the further operations of the well. The power and duty of this court in such case was pointed out in the Pelham Petroleum Co. v. North Case, supra, and expressly declared in Donaldson v. Josey Oil & Gas Co., 106 Okla. 11, 232 Pac. 821, in this language:

"In the exercise of its equity power the trial court, or this court, could cancel the entire lease, or it may, according to the circumstances of each particular case, where it is shown that part of the leased premises has been developed with reasonable diligence of the lessee and other parts have not, cancel the lease as to the undeveloped portion and permit the lessee to continue to operate the developed part thereof, and where, as in this case, we hold that the object of the operations contemplated by the oil and gas lease is to obtain a benefit or profit for

both lessor and lessee, neither is, in the absence of a stipulation to that effect, the arbiter of the extent to which, or the diligence with which, the operations shall proceed, but both are bound by the standard of what, in the circumstances, would be reasonably expected of operators of ordinary prudence, having regard to the interest of both. This, upon the authority of Carder v. Blackwell Oil & Gas Co., 83 Okla. 243, 201 Pac. 252; Pelham Petroleum Co. v. North, 78 Okla. 39, 188 Pac. 1069, and Brewster v. Lanyon Zinc Co., 140 Fed. 801, 72 C. C. A. 213."

The case is remanded, with directions to the trial court to take evidence for the purpose of determining what part of the leasehold is necessary to the operation of the well, including the use of the pipe line, railway switch, buildings, and other equipment for the use of the lessee and the employees, and necessary ingress and egress, and make proper findings as to such necessity, and thereupon enter judgment in accordance with the views expressed in this opinion.

By the Court: It is so ordered.