**BERTON et al. v. COSS et al.**

No. 18413.    Opinion Filed Oct. 1, 1929.

Biddison & Hays, for plaintiffs in error.

Charles B. Steele, Yancey & Fist, and David A. Kline, for defendants in error.

DIFFENDAFFER, C.    Plaintiffs in error were plaintiffs and defendants in error were defendants in the trial court.    They will be herein referred to as in the trial court.

Plaintiffs commenced this action October 11, 1926, in the district court of Wagoner county, to establish their title and claim to a certain oil and gas lease covering the E.½ of N. W.¼ and lots 2 and 3 in section 7, twp. 16 N., range 15, E., in Wagoner county, and to remove a cloud from such title.

The land was originally patented to defendant Ed. Reynolds.    On October 14, 1920, Reynolds executed and delivered an oil and gas mining lease to plaintiff Jones Oil & Gas Corporation, and by subsequent assignments and transfers all the other plaintiffs acquired their interest.    The lease was filed of record October 17, 1921.    Before this, in 1916, Reynolds had, by general warranty deed, conveyed all his interests in the land to defendant V. R. Coss, but this deed was not placed of record until July 27, 1923.    May 13, 1924, Coss mortgaged the land to defendant Commercial National Bank.    December 3, 1925, defendant Coss, by deed, transferred the E.½ of N. W.¼ and lot 2 of said section 7 to defendant A. C. Saint, and at or about the same time gave Saint an oil and gas mining lease covering lot 3. Saint afterwards assigned the oil and gas lease to defendant C. W. Gillette. Margaret

R. Coss is the wife of defendant V. R. Coss and Lily Saint is the wife of defendant A. C. Saint. Just what interest defendant H. F. Wilcox has or claims in the land does not appear, but plaintiffs allege that he claims some interest therein inferior to the interest they claim.

Plaintiffs in their second amended petition, upon which the cause was tried, alleged in substance: That they were the owners and in possession of a certain oil and gas lease covering the premises involved, attaching a copy thereof, and that defendants and each of them claim some interest in the premises, but that such claims are junior and inferior to plaintiffs' lease. The cloud upon plaintiffs' title was alleged to be cast thereon by the filing of record the deed from Reynolds to Coss, the mortgage of Coss to the bank, subsequent oil and gas lease from defendant Coss to defendant Saint, and certain assignments of the oil and gas lease, or a portion thereof, from Saint to Gillette, all dated after plaintiffs' lease, thereby rendering it unsafe and unprofitable to plaintiffs to further develop the property.

The plaintiffs lease contained, among others, the following provision:

"It is agreed that this lease shall remain in force for a term of 14 months from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee, "and that the lessee" pay the lessor $300 each year in advance, for the gas from each well where gas only is found, while the same is being used off the premises."

Plaintiffs further alleged that under an assignment from Jones Oil & Gas Corporation to certain other plaintiffs, a well was drilled thereon which was a valuable gas well from which gas was sold for sometime in very profitable quantities, and that Jones Oil & Gas Corporation paid the gas well rentals thereon to the account of Ed Reynolds in the Exchange National Bank of Tulsa, the last of which was paid about October 10, 1923; that about this time, the well became clogged and unclean, and it became necessary to clean out the same, which was done by Jones Oil & Gas Corporation, for which they received back from the other plaintiffs certain of their interest theretofore assigned; that before their work was completed, and before the work done had become effective, plaintiffs discovered and learned of the deed from Reynolds to Coss, dated prior to their lease from Reynolds, but not filed for record until July 27, 1923, and the mortgage from Coss to the bank;

and that thereupon plaintiffs temporarily abandoned further development and operation of their lease, for the alleged reason that they would be unable to sell or dispose of their lease had production been renewed, and unable to dispose of production had it been renewed in that the purchasing companies would not pay the price of the gas or oil runs so long as their title was in question. It was alleged that the deed from Reynolds to Coss was without consideration, made to evade creditors, and that Reynolds was at all times the equitable owner of the land, and that all the defendants at all times had knowledge of these facts; that the later deed from Coss to Saint was also without consideration and void; that by placing said deeds, mortgages and subsequent lease of record, defendants clouded plaintiffs' title.

In a second cause of action, plaintiffs prayed for damage in the sum of $15,000, but this cause of action was dismissed, without prejudice before the trial.

Plaintiffs prayed that the claims of all the defendants in and to the premises be adjudged to be inferior to the claim of plaintiffs and that the several conveyances adverse to plaintiffs be canceled and removed as a cloud upon the title.

Defendants Saint and Gillette answered separately by general denial, and pleaded abandonment of their lease by plaintiffs. Defendants Coss and Reynolds joined in an answer in the nature of a general denial, but admitted the execution of plaintiffs' lease, admitted that plaintiffs had no notice of the unrecorded deed from Reynolds to Coss until it was filed for record, and expressly admitted the validity of the lease under which plaintiffs claimed, when executed, and further pleaded abandonment of their lease by plaintiffs.

In their answer they further alleged that the deed from Reynolds to Coss when executed was in the nature of security for certain indebtedness from Reynolds to Coss; that it was the intention of the parties that upon payment of this indebtedness by Reynolds the deed was to be canceled, otherwise to remain in full force as an absolute conveyance; that upon failure to pay the indebtedness the deed became absolute, whereupon it was placed of record.

The reply of plaintiffs was in effect a general denial, with the further allegations that the deed from Reynolds to Coss, being in the nature of a mortgage, had never been foreclosed and therefore Coss never acquired any title which he could convey to Saint.

The cause was tried to the court, and at the close of plaintiffs' evidence, each defendant demurred thereto. The demurrer was sustained. Judgment was entered dismissing plaintiffs' petition, with prejudice. From this order and judgment, plaintiffs appeal.

There are several assignments of error, but we think they are all included in the one question, viz.: Did the court err in sustaining the demurrer of defendants to plaintiffs' evidence? However, we have considered the alleged error complained of in overruling the demurrer of plaintiffs to the answer of defendants Coss and Reynolds, and in view of the admission of defendants of the validity of plaintiffs' lease, at its inception, we find no error therein.

The trial court held, and we think properly so, that the only issue raised by the pleadings was that of abandonment of the lease by plaintiffs.

The finding of the trial court as disclosed by the journal entry, is:

"The plaintiffs having introduced their evidence and rested, all defendants, and each of them demurred to the evidence offered and introduced for and on behalf of the plaintiffs on the ground and for the reason that same was not sufficient to entitle the plaintiffs to the relief prayed for herein, or, to any relief at all or to sustain the plaintiffs' cause of action, alleged in their petition, and the court being advised upon the evidence and upon said demurrer, and having weighed and considered said evidence, finds and holds that by the weight thereof plaintiffs have not sustained the allegations of their petition nor their cause of action alleged, and that the plaintiffs' petition and cause of action herein should be dismissed with prejudice for want of equity."

It is conceded by both parties that the proper procedure where the cause is one triable to the court, as in this case, and a demurrer is presented to the evidence of the plaintiff, is that the court make its findings which show that it has weighed and considered the evidence introduced, as was held in Sheppard v. Holt, 119 Okla. 168, 249 Pac. 302, and cases therein cited.

The demurrer to the evidence is not authorized under the practice in this state in an equity case, but where such practice is followed the demurrer will be treated by the court as a motion by the defendant for judgment for defendant upon the evidence produced by the plaintiff. Donaldson v. Josey Oil Co., 106 Okla. 11, 232 Pac. 821.

This being a cause of purely equitable cognizance, this court will upon appeal consider and weigh the evidence, but the judgment of the trial court will not be disturbed unless it is against the clear weight of the evidence.

Plaintiffs' only evidence, aside from the several leases, deeds, assignments, etc., was that of but two witnesses, Frank T. Jones, president of the Jones Oil & Gas Corporation, and defendant V. R. Coss. Coss testified only in substantiation of the allegation as to the deed from Reynolds to Coss, being in the first instance in the nature of security for an indebtedness. This was admitted in the pleading. Jones testified, in substance: That he was agent for all the plaintiffs, and as such had charge of their interests in the lease and this action; identified a copy of the original lease which was in evidence; that Jones Oil & Gas Corporation assigned 80 acres of the lease to certain of the plaintiffs in consideration of their drilling a well thereon; they drilled the well about October, 1921; it was a gas well; he did not know its capacity, but approximated the capacity when the well came in at about 8,000,000; gas was sold from this well to the Oklahoma Natural Gas Company for awhile; did not know when this was when they commenced to sell, nor where they quit, but it was sold for a period of about six months; some gas was sold to the Mountain Creek Oil & Gas Company for drilling other wells; witness, as agent for Jones Oil & Gas Corporation, paid to the account of Ed. Reynolds at the Exchange National Bank of Tulsa, $300 on October 10, 1923 (The Exchange National Bank was the depository for payment of rentals under the lease for privilege of deferring the commencement of a well on or before October 14, 1921); that the Oklahoma Natural Company bought gas from the well for awhile (Witness did not know when or for how long.); that the Mountain Creek Oil & Gas Company bought some for awhile, did not know when or for how long, or anywhere near the date; they used it to run an engine with gas pressure; at time of trial, there was a two-inch tube in the well, very little gas, and then only when the well was pumped; when the well failed to give off gas in large quantities, witness ran the tubing in the well, and put in a small pumping outfit; the well would then make about 1½ barrels of water, and some gas when the water was pumped off. This was about July, 1923; did not try to pull casing; never finished the work; intended to drill another well; plenty of gas in October, 1923, when the $300 was paid; did nothing more until about July, 1924, when he discovered the

deed from Reynolds to Coss was of record; never knew of this deed or its existence until about a year after it had been filed of record. In July, 1924, after learning of the deed, went to Coss about getting him (Coss) to sign the lease; at that time Coss told him: "You don't have any lease," and told him to go and see Reynolds, which he did, and Reynolds said: "We didn't have a lease."

Saint also told witness that plaintiffs had no lease; did not proceed further to develop the lease because Reynolds, Coss and Saint had told him he had no lease; that the property of Jones Oil & Gas Corporation was still upon the lease; that plaintiffs had never drilled or operated the lease, except in connection with the one well; that the plaintiffs never did abandon nor intend to abandon the lease; had not put any gas in pipe line for more than six months before the $300 was deposited in the bank; was disconnected from pipe line because of decrease in pressure below the minimum pressure of 150 pounds required; no gas was used and no payment of rental was made after October, 1923; offered to pay Ed. Reynolds, but he refused to accept the rentals, giving as his reason that the "lease was out." When asked why he did not pay it at the bank, as he had the other $300, said he did not know; did not know the pressure at the time well was disconnected from pipe line; had not developed the lease and had not been on it since 1923; stopped operations because of the cloud on the title and because Coss and Reynolds told him they had no lease; did nothing further to develop the lease except to see Coss two or three times to get him to sign the lease; that Coss did not dispute that the lease was good, except to say that, "It was out"; that the well had been left standing open since about 1924.

There is no evidence whatever to show that defendants Saint or Coss had any notice or knowledge of the facts, except such as were shown by the record, and the condition of the leased premises. The evidence shows that the Jones Oil & Gas Corporation and the other plaintiffs all claimed an interest in the E.½ of the N. W.¼, and Jones Oil & Gas Corporation claimed all the N. W.¼ of the S. W.¼ of section 7; that the Jones Oil & Gas Corporation had never made any attempt whatever to drill or develop that part of the leasehold retained by it.

We consider the evidence then to determine whether the finding of the trial court and the judgment based thereon are against the clear weight of the evidence. The plaintiffs asserted that they were the owners of a valid and subsisting oil and gas lease covering the premises and were in possession thereof, and asked only that the alleged cloud be removed from their title. It is conceded that the lease, under which plaintiffs claim, was valid in its inception. The question is: Does the evidence offered and produced by plaintiffs show that they had failed to develop and operate the lease so as to thereby constitute an abandonment thereof?

By the terms of the lease, it clearly appears that it is within that class of leases showing the principal purpose and design of the parties thereto to be the production and marketing of the oil and gas in the land for their mutual benefit. The mere discovery of oil or gas by exploration under its terms vests no title to it in the lessee, but does vest in him the right to produce and take the same in accordance with the terms and condition of the contract. In such right, the lessee will be protected, but he must proceed to exercise it with reasonable promptness and diligence. Parish Fork Oil Co. v. Bridgewater Gas Co., 51 W. Va. 583 42 S. E 655, 660, 59 L. R. A. 566. In that case, it was held:

"The law recognizes a distinction between the abandonment of operations under an oil lease and an intention to abandon or surrender the lease itself. Unless bound by the terms of the lease so to do, it will not permit the lessee to hold the lease without operating under it, and thereby prevent the lessor from operating on the land or leasing it to others."

The above case is similar in many respects to the instant case. In the body of the opinion, it was said:

"It is by no means conclusive of the question of abandonment that the lessees insisted that their lease was not forfeited, that there were some circumstances which rendered it inconvenient for them to continue the work of exploration, and that Cox made some effort to have the alleged defective title of Swisher perfected. All this is consistent with the intention to continue the work of exploration, but it is equally consistent with the intention merely to endeavor to hold onto the lease without doing any work under it,—a thing which the policy of the law does not permit unless the right to do so is absolutely fixed and secured by the terms of the contract; and even then it is not always permitted."

In Donaldson v. Josey Oil Co., 106 Okla. 11, 232 Pac. 821, it was held:

"Ordinarily, oil and gas leases are executed for the purpose of exploring and operating for oil and gas, and where its terms will

permit it, under the rules of law, such lease will be construed so as to promote development and prevent delay and unproductiveness.

"Where the object of the operations contemplated by an oil and gas lease is to obtain a benefit or profit for both lessor and lessee, neither is, in the absence of a stipulation to that effect, the arbiter of the extent to which, or the diligence with which, the operation shall proceed; but both are bound by the standard of what, in the circumstances, would be reasonably expected of an operator of ordinary prudence, having regard to the interest of both."

In New State Oil & Gas Co. v. Dunn, 75 Okla. 141, 182 Pac. 514, it was held:

"Without an express covenant in an oil and gas lease to develop within a certain period, the law will imply a covenant to develop within a reasonable time in view of the surrounding circumstances, and forfeiture may be declared for failure to so develop."

In Eastern Oil Co. v. Coulehan (W. Va.) 64 S. E. 836, it was held:

"The discovery of oil or gas under a lease giving right of exploration and production, unless there is something in the lease manifesting a contrary intention, is sufficient to create vested estate in the lessee in the exclusive right to produce oil or gas provided for therein—a right, however, which may be lost by abandonment, by failure to produce oil or gas, or pursue the work of production, or development of the property."

In Blackwell Oil & Gas Co. v. Whitesides, 71 Okla. 41, 174 Pac. 573, it was held:

"A court of equity has jurisdiction to decree the forfeiture of an oil and gas lease on account of the breach of an implied covenant to diligently operate and develop the property, when such forfeiture will effectuate justice, and the lessor is not limited to an action for damage because of such breach, where the measure thereof is uncertain, vague, and indefinite."

In the body of the opinion, Mr. Justice Rainey, speaking for the court, said:

"We are unable to perceive any substantial reason why the same equitable principles should not be applied to a condition where the one well drilled on the leased premises produced gas only as to a condition where the initial development produced oil, or oil and gas, even though the royalty for gas provided for in the lease is a stipulated sum per annum for each well. * * * Under such circumstances equity affords the only adequate remedy for relief, and the lessee should be required to reasonably and fairly develop the land, or surrender the lease."

In that case it was further held:

"In an action to cancel an oil and gas lease for failure to diligently operate and develop the property, the trial court found that the leased premises were not being sufficiently operated and developed. The judgment will not be disturbed by the Supreme Court on the ground of the insufficiency of the evidence, since it is not clearly against the weight of the evidence."

In Brewster v. Lanyon Zinc Co., 140 Fed. 801, wherein the cancellation of an oil and gas lease very similar in its terms to the one here under consideration, and under a state of facts strikingly similar, to wit:

"Near the expiration of the period allowed for original exploration and development, the lessee drilled a single well on one of the tracts, in which gas was found in paying quantity, and thereafter took and maintained the position that by drilling that well and paying the stipulated price for gas used therefrom, it acquired the right to hold the lease indefinitely without further development. This situation continued for 14 months, when the lessor elected to terminate the lease for breach of the covenant and condition for the exercise of reasonable diligence,"

—it was held:

"That in these circumstances the prolonged failure of the lessee to continue the work of development and production, though due to a mistaken view of the obligations imposed by the lease, was a plain and substantial breach of the covenant and condition and entitled the lessor to terminate the lease."

The question of abandonment is to be determined by the facts and circumstances surrounding each particular case. The intent to abandon by the lessee is to be determined by his attitude towards the enterprise as a whole. He might intend to hold the land itself without any intention of proceeding to test the premises and develop same for oil and gas. If he abandon the purpose of the lease, he will be held to have abandoned the land which was granted as an incident to the enterprise. Mills on Oil & Gas, 166.

There being no evidence tending to show that the cost of drilling additional wells would have been such as to render it unprofitable to drill same, and no showing of a lack of market for the oil or gas if such had been produced, and the evidence of plaintiffs, considering all the circumstances, being such that it would justify a finding by the trial court that plaintiffs had failed to comply with the implied conditions of the lease to properly develop the leased premises, we think the trial court was justified in holding that, by the weight of the evidence produced by plaintiffs, they had failed to sustain the allegations of their petition.

Under a separate assignment of error, plaintiffs complain of the admission of certain evidence in the cross-examination of defendant Coss, wherein he was permitted to testify as to the understanding between himself and Reynolds at the time the deed was executed, and that the deed was to become absolute unless the obligations for which it was given as security were paid.

This evidence, whether admissible or not, could not have been harmful to plaintiffs for the reason that both Coss and Reynolds, by their answer, admit the validity of plaintiffs' lease at its inception. The validity of the lease when executed was not an issue. The trial court so held, and we think its holding, in this respect, was proper.

From the whole record, we are unable to say that the finding and judgment of the trial court is against the clear weight of the evidence.

The judgment should be affirmed.

BENNETT, HERR, HALL, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) anno. 34 L. R. A. (N. S.) 35; 34 A. L. R. 275; 18 R. C. L. p. 1214; 3 R. C. L. Supp. p. 905; 4 R. C. L. Supp. p. 1243. (2) anno. L. R. A. 1915B, 561; 18 R. C. L. p. 1190; 3 R. C. L. Supp. p. 897; 4 R. C. L. Supp. p. 1240; 5 R. C. L. Supp. p. 1018. See "Appeal and Error," 4 C. J. § 2853, p. 877, n. 80. "Mines and Minerals," 40 C. J. § 666, p. 1053, n. 10; § 686, p. 1069, n. 44; § 697, p. 1079, n. 92; § 723, p. 1098, n. 77.