## MISTLETOE OIL & GAS CO. v. REVELLE et al.

No. 16675—Opinion Filed April 6, 1926.

**1. Appeal and Error—Review of Evidence in Equity Case.**

Where, in an action of purely equitable cognizance, tried to the court without the intervention of a jury, the finding of the court is not clearly against the weight of the evidence and comes within the principles of equity, the decision of the lower court should be and must be affirmed, but, if the court, after weighing the evidence, finds that the judgment of the trial court is clearly against the weight of the evidence, the judgment will be reversed.

**2. Oil and Gas—Leases Construed to Promote Development.**

Ordinarily oil and gas leases are executed for the purpose of exploring and operating for oil and gas, and where its terms will permit it, under the rules of law, such lease will be construed so as to promote development and prevent delay and unproductiveness.

**3. Same—Mutual Interests of Lessor and Lessee.**

Where the object of the operations contemplated by an oil and gas lease is to obtain a benefit or profit for both lessor and

lessee, neither is, in the absense of a stipulation to that effect, the arbiter of the extent to which, or the diligence with which, the operation shall proceed, but both are bound by the standard of what, in the circumstances, would be reasonably expected of an operator of ordinary prudence, having regard to the interests of both.

**4. Same—Forfeiture for Breach of Implied Covenant to Develop.**

A court of equity will decree a forfeiture of the whole, or part, of an oil and gas lease on account of a breach of an implied covenant to diligently operate and develop the property when such forfeiture will effectuate justice. The granting of such relief depends upon the facts and circumstances surrounding each particular case.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Cotton County; A. S. Wells, Judge.

Action by I. K. Revelle et al. against the Mistletoe Oil & Gas Company and the National Oil & Development Company. Judgment for plaintiffs against the Mistletoe Oil & Gas Company, and the latter appeals. Affirmed.

A. J. Welch, for plaintiff in error.

H. F. Tripp, for defendants in error.

Opinion by MAXEY, C. The plaintiff, I. K. Revelle, owned 160 acres of land in Cotter county, Okla., and on November 9, 1917, executed to E. M. Boring an oil and gas lease upon three 40's, or 120 acres of said 160 acres, retaining one 40 acres in his own name. The 120-acre lease is described as the S. 1-2 and N. W. 1-4 of the S.W. 1-4 of sec. 11, twp. 2, R. 11 W. I. M.

The granting clause and covenants in the lease contract run to, and for, the benefit of the lessees, assignees, and the entire 120 acres was leased as one single tract of land under one single lease contract. The lease recited a cash consideration of $120 paid at the time it was made, and ran for a term of three years. "and as long as oil and gas or either of them is produced from said land by the lessee." It further provided that the development must be started within 12 months from date of lease, and that in the event of failure to do so the lease might be kept in force by the payment of $10 per acre as annual rental.

Pursuant to the covenants set out in the lease, the said lessee paid the first or cash rentals of $120, and failing to start development within twelve months he then paid the second rentals of $10 per acre, or $1,200,

which entitled him to another twelve months. But before the termination of the second year period, for which rent had been paid, Boring assigned his lease to the Mistletoe Oil & Gas Company for the entire 120 acres, and the Mistletoe Oil & Gas Company assigned 80 acres, being the S.½, S. W. ¼, 11, 2 S., R. 11, W. I. M., to the National Oil & Development Company, and before the expiration of the second year, for which $10 per acre had been paid, the National Oil & Development Company commenced drilling a well thereon, and in April, 1920, brought in a small oil well producing 50 or 60 barrels a day. This well was drilled to a depth of 2,214 feet. No other well was drilled upon the 120-acre tract until after this suit was filed, when the National Oil & Development Company drilled another well, which turned out to be a dry hole. The cost of drilling wells in this section was from $15,000 to $25,000, depending on the good luck or hazards incident to the drilling business. The average cost of equipping a well with pump is $3,500.

The petition was filed against both the National Oil & Development Company, holding the 80 acres, and the Mistletoe Oil & Gas Company, holding 40 acres, but the action was dismissed as to the National Oil & Development Company, and tried as against the Mistletoe Oil & Gas Company, holders of the 40 acres, and judgment was rendered for plaintiff canceling the lease upon the 40 acres held by the Mistletoe Oil & Gas Company, and it has appealed to this court, and the sole question for this court to decide is whether the judgment of the trial court canceling the lease on the 40 acres, held by Mistletoe Oil & Gas Company, should be affirmed.

After this suit was brought, the plaintiff and the National Oil & Development Company entered into a new contract whereby it was agreed by the plaintiff that if the National Oil & Development Company would drill another well to the depth of 2,020 feet this suit would be dismissed as to it. The National Oil & Development Company drilled this well to the required depth, but it was dry and no production was obtained therefrom, and under that agreement the suit was dismissed as to it, and continued as to the Mistletoe Oil & Gas Company.

There is no question but what, under the terms of the lease, Boring, the original lessee had a right to assign all or any part of the land covered by said lease, and he did assign all of his interest in said lease to the Mistletoe Oil & Gas Company, and the Mistletoe Oil & Gas Company assigned 80 acres

of the 120 to the National Oil & Development Company, and the plaintiff afterwards made a contract with the National Oil & Development Company whereby they agreed that if the National would drill an additional well to a given depth, the suit would be dismissed as to it. This well was drilled and the suit dismissed as to the National Oil & Development Company. In other words, it appears that the plaintiff, after making the contract with the National Oil & Development Company, treated the 80 acres held by it and the 40 acres by the Mistletoe Oil & Gas Company as separate and distinct leases; and, under the contract between the plaintiff and the National Oil & Development Company, we think the part held by the National, up to the time of making the contract, if it might be considered a part of the original lease, certainly after the contract to drill an additional well, then became a separate and independent contract from the original lease. It is contended by plaintiff in error that the drilling on the 80 acres held by the National Oil & Development Company was a development of the entire lease, including that part held by the Mistletoe Company. This question is not a new one in this jurisdiction. The courts have frequently held that in a suit for cancellation the court will take into consideration the attempted development of the lease, and where it appears that the lessee acted in good faith, the court may in the exercise of its equity powers refuse to cancel that part of the lease which had been developed, and cancel other parts of the lease. Of course, each of these cases stands on the peculiar facts surrounding the circumstances in each case. Indiana Oil, Gas & Development Co. v. McCrory, 42 Okla. 136, 140 Pac. 610, and the Farmers Mutual Oil Leasing Co. v. Bonneau, 110 Okla. 108, 237 Pac. 83, and the case of Brewster v. Lanyon Zinc Co., 8th U. S. Circuit Court of Appeals, 140 Fed. 801. and Donaldson v. Josey Oil Co., 106 Okla. 11, 232 Pac. 821. This court, having the same question involved as in this case, collated the authorities bearing on this subject and adhered to the equitable doctrine of the right of the court to cancel part of a lease and refuse to cancel other parts of it where an honest effort to develop had been made. Applying the rule laid down in the foregoing cases to the the case at bar, we are of the opinion that the trial court reached a just and equitable decision in this case. The court at the close of the testimony and the argument in the case dictated into the record its findings of fact and conclusion of law, which are as follows:

"By the Court: This matter now comes up on motion of the defendant for judgment in favor of the defendant, notwithstanding the evidence as offered by the plaintiff; and the court now finds the following facts from the evidence: The court finds the lease on the 120 acres in question was in 1917 made by I. K. Revelle and his wife to one Boring and that thereafter the said Boring assigned the 120 acres to the Mistletoe Oil & Gas Company, and that thereafter the Mistletoe Oil & Gas Company assigned the south 80 acres to the National Oil & Development Company; that thereafter, prior to the expiration of the lease by its own terms, the National Oil & Development started to drill a well on the southeast quarter of the quarter section of land, and pursued the drilling until an oil well was brought in and began producing oil in April, 1920, and the court finds that by the evidence the same continued to produce oil, and was producing oil at the time of filing of this suit, and at the time of filing of the suit it was the only well drilled or attempted to be drilled on the entire 120 acres.

"The court further finds from the evidence that south and on the adjoining quarter section there was drilled a dry hole, and the court further finds that in recent months there had been drilled on the quarter south of said land a producing gas well. And the court finds from the evidence approximately one mile east of said land a dry hole was drilled, and approximately a half mile west there was drilled a dry hole, and the court further finds that at the time of the institution of this suit there was no drilling, and at this time the National Oil & Development Company made a separate contract with the owners of the land to drill another well on the south 80, and by the terms of the said contract the plaintiff agreed to dismiss this suit as to the defendant National Oil & Development Company, provided the National Oil & Development would drill another well to the depth of 2,020 feet unless oil and gas, or either would be discovered at a lesser depth, and agreed in addition thereto that the plaintiff should have 1-8th of the gas produced from said land, and the court finds the well was drilled according to the terms of the contract. The court further finds concerning the particular 40 in question there has never been any development on same.

"Now, the court concludes the law to be that by the terms of the original lease, the payment of the rentals and drilling of the well, the lessee had the land for a term of three years, and as long thereafter as oil or gas was produced from said premises. The court is of the opinion that, notwithstanding the plain terms of the lease, the law is, the lessee is bound to develop the premises with reasonable diligence, taking into consideration all the facts and circumstances in the case, as to whether or not it would be profitable between the lessee and

the lessor. The court is of the opinion the law in this case is that the original lessee or assignor thereof would under the law and facts in this case be entitled to hold sufficient amounts of the lease to protect them in the production and saving of the oil now being produced, and entitled to hold the same as long as oil is being produced, but the court finds, as a matter of law, reasonable diligence had not been exercised to develop all of the premises, and the court holds, as a matter of law, the plaintiff is entitled to cancellation of the lease and assignments in so far as it affects the northwest 40 of said section of land, which northwest 30 is now shown by record to be owned and held by the Mistletoe Oil & Gas Company.

"And it is adjudged and decreed that the plaintiff recover in this case the cost laid out and expended, and that the lease and assignment thereof be canceled in so far as they affect the 40 acres owned by the Mistletoe Oil & Gas Company."

After an examination of the testimony and the authorities cited, we are of the opinion that the judgment of the trial court is sustained by the great weight of testimony, and that the court made fair and just findings of both fact and law in this case, and that its judgment should be, and is, hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 900 § 2869; p. 902 § 2871; 2 R. C. L. p. 203; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 91. (2) 27 Cyc. p. 727; 12 R. C. L. p. 870; 4 R. C. L. Supp. p. 771. (3) 27 Cyc. p. 730 (Anno). (4) 27 Cyc. p. 734; anno. L. R. A. 1915B, 561; 12 R. C. L. p. 874; 4 R. C. L. Supp. p. 772.