**EXCHANGE TRUST CO. v. OKLAHOMA STATE BANK OF ADA.**

No. 17202. Opinion Filed June 28, 1927.

Rehearing Denied Sept. 27, 1927.

(Syllabus.)

1. **Appeal and Error—Final Orders—Order Vacating Receivership of Mortgaged Property After Foreclosure Appealable.**

Where, after a decree in foreclosure ordering a sale and directing distribution of the proceeds, a receiver is appointed, qualified and collects rents from the mortgaged

premises during the redemption period, and subsequently, upon application of one claiming adversely to the party upon whose application the receiver was appointed, the court makes an order vacating the appointment of the receiver and directing the receiver to pay all his collected rents to the adverse claimant, held, the order vacating the appointment is not an interlocutory, but a final order within the purview of section 781, C. O. S. 1921, which declares that "an order affecting a substantial right * * * made * * * upon a summary application in an action after judgment," is a final order, and appealable.

**2. Receivers—Appointment Without Notice —Waiver of Error by Motion to Vacate.**

Where, after a receiver is appointed without notice, a party complaining of the appointment files a motion to vacate upon nonjurisdictional grounds and appears and tries the issues tendered under the motion to vacate, the error in making the appointment without notice is waived.

**3. Same—Procedure for Vacating Order Appointing Receiver After Term—Notice.**

An order appointing a receiver is interlocutory and may be vacated for cause upon motion filed after the term at which the appointment was made, after such notice to the parties as the court may direct, and such proceeding need not conform to sections 810 and 812, C. O. S. 1921, providing for verified petition and summons.

**4. Mortgages—Contract Provision for Appointment of Receiver—Statutory Procedure Controlling.**

A contractual provision in a mortgage stipulating for the appointment of a receiver creates no obligation on the court to appoint a receiver; but its jurisdiction to make such appointment depends upon the provisions of the statute.

**5. Same—Abuse of Discretion in Vacating Order Appointing Receiver.**

The bank, moving for an order vacating the order appointing a receiver, was not aggrieved. It was not the owner or in possession of the mortgaged premises or crops thereon. It was not under the order appointing receiver chargeable with any expense in connection with the receivership. It utterly failed to establish any lien upon the crops. The court's finding that the mortgaged property was sufficient to discharge the mortgage indebtedness of the Exchange was clearly against the weight of the evidence. Held, the court abused its discretion in vacating the order appointing receiver.

**6. Appeal and Error—Review of Evidence in Equity Case—Disposition of Cause.**

In a case of purely equitable cognizance, it is the duty of the Supreme Court, when the sufficiency of the evidence to support the findings of the trial court is challenged, to consider the whole record, and to weigh all the evidence; and when the judgment of the trial court is clearly against the weight of the evidence, render or cause to be rendered such judgment as should have been rendered in the trial court.

Commissioners' Opinion, Division No. 1.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

From an order vacating an order appointing receiver and awarding receivership funds to Oklahoma State Bank of Ada, movant, the Exchange Trust Company appeals. Reversed.

W. D. Calkins, Jno. Y. Murry, and Chas. E. Bush, for plaintiff in error.

B. H. Epperson, for defendant in error

MONK, C. The Exchange Trust Company was plaintiff below, is plaintiff in error here, and will hereinafter be referred to as the Exchange. The Oklahoma State Bank was defendant and cross-petitioner below, is defendant in error here, and will hereinafter be referred to as the Bank.

This is an appeal by the Exchange from an order of the district court, vacating an order made at a prior term appointing a receiver. The order appealed from, in addition to vacating the order appointing a receiver and discharging the receiver, directed that the funds held by him as such receiver be paid to the Bank.

The following statement is necessary to an understanding of the questions presented on appeal:

On March 11, 1924, the Exchange filed its action in the district court of Pontotoc county, Okla., against C. W. Floyd and Rosa Floyd, the Bank, and other parties, seeking judgment upon two promissory notes and foreclosure of a second mortgage. The mortgage contains the following clause:

"But if the first party, their heirs or assigns, shall make default in the payment of any note or notes at maturity, or any interest thereon when due, * * * thereupon this mortgage shall become absolute and the owner of said indebtedness may immediately cause the mortgage to be foreclosed in the manner prescribed by law, appraisement waived, and shall be entitled to have a receiver appointed to take charge of the premises, to rent the same and receive and collect the rents, issues and royalties thereof, under direction of the court, and any amount so collected by such receiver shall be applied under direction of the court to the payment of any judgment rendered, or amount found due upon foreclosure of this mortgage."

This mortgage was filed for record and recorded on June 2, 1920, in Book 30, at page 429.

The petition contained an allegation that under the mortgage the Exchange was entitled to receive the rents and profits from the land after default, and that the mortgaged premises were probably insufficient in value to pay any judgment which the Exchange might recover; that unless a receiver were appointed to take possession of the property, preserve the same and collect the rents and profits, the plaintiff would suffer irreparable injury; and the petition prayed for the appointment of a receiver.

To this petition the defendants C. W. and Rosa Floyd filed their answer, and the Bank its answer and cross-petition, asking judgment against the Floyds; and on June 22, 1925, final judgment was rendered in the cause in favor of the Exchange and against the defendants Floyds in the sum of $1,-205.17.

The court, also, upon the cross-petition of the Bank, gave judgment in its favor against the Floyds in the sum of $1,693.38; decreed the Exchange to have a second and the Bank a third lien, and directed the property described in the mortgage to be sold subject to a first mortgage upon the property in the sum of $8,000.

On August 17, 1925, on application of the Exchange, the district court appointed R. E. Carpenter as receiver, "over one-half of the rents arising from the 1925 crops raised upon the premises described in the petition of plaintiff." The order appointing receiver was made at the April, 1925, term of the court, which expired on the 30th day of September, 1925.

On the hearing for appointment of a receiver, it was testified that the indebtedness on the first and second mortgage was $10,649, and in addition to that, delinquent taxes in the sum of $935; that both first and second mortgages bore six per cent.; that the second mortgage carried an attorney's fee of $185; and that the second mortgage had been in default since December, 1923. The aggregate mortgage indebtedness to the Exchange was $11,584.

In support of the application for the appointment of the receiver, the following testimony appears:

W. T. Melton said he had known the land for the last 17 years; was familiar with the reasonable cash market value, and that it would not exceed $40 an acre, be-

tween $30 and $40, "something like $8,-000"; that the land adjoining the mortgaged premises sold for $35 an acre.

Charles Auten testified he was in the real estate business; was "pretty well" acquainted with the mortgaged premises; that $35 an acre would be a "pretty fair value for it."

L. P. Carpenter testified that he was inspector for the Exchange Trust Company, and acquainted with values of lands in that vicinity; that he had been over the land the day before; that it was not worth "over $35" an acre, "between $30 and $40."

In the hearing of the Bank's petition to vacate the appointment of receiver, C. W. Floyd after describing the land, improvements, and the cost of making some of the improvements, testified that the land was worth $65 or $70 an acre; that in 1925 a cotton crop was raised on the land by Messrs. Young & Burns; that at the time of the witnesses' testimony, Burns had half the rent and had given the other half to Carpenter (the receiver) in the sum of $200.

L. A. Braly testified that he was a real estate man, familiar with the value of the mortgaged premises, and that they were worth $10,000.

J. R. Floyd (a defendant under the cross-petition of the defendant Rollow Hardware Company, in the main action, and served by summons issued by said company), testified that the mortgaged premises were worth $65 an acre.

On October 8, 1925, the Bank filed its petition to discharge the receiver, and for an order directing the payment of the monies collected by him in satisfaction of the Bank's mortgage.

The petition of the Bank, exclusive of caption, signature and indorsements, is as follows:

"Now comes Oklahoma State Bank of Ada, Okla., one of the defendants in the above-entitled cause, and respectfully shows that on August 17, 1925, a receiver was appointed over one-half of the rents for the year 1925 for crops raised on the premises by said defendant, C. W. Floyd, as described in petition of plaintiff; that the property upon which foreclosure had been brought is entirely adequate and sufficient to satisfy the judgment of plaintiff; that your petitioner has a mortgage on the crops for which receiver has been appointed, and that it furnished the money to raise this crop and the appointment of said receiver

and the application of the rents to satisfy the claim in judgment of the plaintiffs will work hardship and irreparable injury to the defendant.

"Wherefore, premises considered, your petitioner asks that said receiver be discharged or that an order be made requiring said receiver to pay the money he has collected on the premises in satisfaction of defendant's mortgage, and for such other and further relief as it may be entitled to, and will ever pray."

No summons was issued or served upon the Exchange after the filing of said petition, but the Bank served the following notice upon the Exchange:

"You are notified that the petition for discharge of receiver in this case will be filed and taken up as soon as same can be reached. Dated this the 7th day of October, 1925."

On December 12, 1925, the Exchange filed the following special appearance:

"Comes now the Exchange Trust Company, the plaintiff above named, and R. E. Carpenter, receiver, and appearing specially for this motion and this motion only, and for the purpose of suggesting to the court, that this court has no jurisdiction to hear and determine the motion or petition of the Oklahoma State Bank for a discharge of the receiver in this cause, for the reason same was filed after the term of court had closed and the order had been made appointing the receiver in this cause.

"Wherefore, judgment of the court is prayed"—which was overruled, exceptions saved and the Exchange filed its answer, which, exclusive of caption, signature and indorsements, is as follows:

"Comes now the Exchange Trust Company, and R. E. Carpenter, receiver, and after its special appearance has been overruled by this court and exceptions allowed, files this as an answer to the petition of said Oklahoma State Bank and in addition thereto alleges:

I

"That on the 17th day of August, 1925, a full hearing was had in this cause as to a receivership, at which hearing plaintiff and defendants C. W. Floyd, Jr., and his wife introduced evidence showing the value of the land covered by the mortgage of plaintiff, and the court took said evidence under advisement until the 24th day of August, 1925. That on said date the matter was again taken up by the court, at which time said defendants C. W. Floyd and wife, through their attorneys, King and Crawford, and the plaintiff, Exchange Trust Company, through its attorneys, McKeown and Green, submitted an agreement to the court that said court may appoint a receiver in that cause over one-half of the crops, and the court acting in obedience to the evidence theretofore introduced, and the stipulation now with plaintiff and said defendants, entered an order on the 24th day of August, 1925, appointing R. E. Carpenter receiver of one-half of the crops raised upon said premises for the year 1925.

II

"And plaintiff further alleges that this court has no jurisdiction to hear and determine said petition for a discharge of the receiver, as said petition was filed on October 8, 1925, after the April term of this court had closed, and was without notice to this plaintiff, as provided by law.

"Wherefore, judgment of the court is prayed denying to the Oklahoma State Bank the relief prayed for in its petition."

On February 15, 1926, a trial was had to the court and the following judgment rendered:

"Now on this the 8th day of February, 1926, at a regular judicial day of this court, comes on for hearing the petition of defendant and cross-petitioner, Oklahoma State Bank, for an order discharging the receiver in this action; the plaintiff, Exchange Trust Company, and the receiver, R. E. Carpenter, appearing by their attorneys, McKeown and Green, and the said Oklahoma State Bank of Ada, Okla., appearing by its attorney, B. H. Epperson, and all parties having announced ready for trial and having waived a jury, the cause was submitted to the court, and it having been first called to the attention of the court that plaintiff and receiver had on file in said cause a special appearance and motion to quash; and it was agreed that the court might pass upon said motion at this hearing, and thereafter, plaintiff and receiver should file an answer instanter, and said cause should proceed to trial; and said special appearance and motion having been presented to the court and on due consideration thereof, the court finds that said motion should be overruled and exceptions allowed, and that plaintiff and receiver be permitted to file their answer instanter and the case proceed; and defendant Oklahoma State Bank having introduced its evidence and rested and plaintiff and receiver having introduced their evidence and rested, the case was taken under advisement until a future time, and now on this the 15th day of February, 1926, at a regular term of said court, said matter was again taken up by the court for final disposition, and plaintiff having interposed a demurrer to the evidence of cross-petitioner, Oklahoma State Bank, and moved for a directed verdict in favor of plaintiff and said receiver, whereupon, the court overruled said demurrer and motion, and exceptions were allowed and the court having considered the evidence introduced and on due consideration thereof, finds that the order heretofore made appointing R. E. Carpen-

ter receiver in this cause, should be vacated, set aside and held for naught, and said receivership discharged and the funds now held by said receiver be paid to the Oklahoma State Bank of Ada, Okla.

"It is therefore ordered, adjudged and decreed by the court that the order heretofore made on the 17 day of August, 1925, appointing R. E. Carpenter receiver for one-half of the rents arising from the property named in the petition of plaintiff for the year 1925, be and the same is hereby vacated. set aside, and held for naught, and that said R. E. Carpenter be and he is hereby discharged as said receiver, and the funds held by him as such receiver, be paid to the Oklahoma State Bank of Ada, Okla., to all of which plaintiff and receiver excepts and said exceptions are by the court allowed.

"And it is further ordered, adjudged and decreed by the court that the special appearance and motion to quash of plaintiff and receiver be and the same is hereby overruled, to which ruling of the court said plaintiff and said receiver are permitted to file their answer instanter and said cause proceed accordingly.

"And it is further ordered, adjudged and decreed by the court that the motion for new trial filed herein by plaintiff and said receiver, be and is hereby overruled on this date. the 15th day of February, 1926, to which ruling of the court plaintiff and said receiver except and said exceptions are by the court allowed, and plaintiff and said receiver, at said time, gave notice of appeal in open court to the Supreme Court, and said notice was duly entered upon the trial docket as provided by law, and upon motion of plaintiff and said receiver, and for good cause shown they were given two days in which to prepare and serve case-made for said appeal, and the said Oklahoma State Bank given two days in which to suggest amendments thereto, and said case-made to be settled upon three days notice, and said appeal to be filed in the Supreme Court as provided by law.

"It is further ordered, adjudged and decreed by the court that supersedeas bond in this case be and is hereby fixed in the sum of $1,500; and that said bond be furnished and filed with the clerk of this court on or before the 20th day of February, 1926, and that upon the filing and approval of said bond, further procedure in this cause be and same is hereby stayed until said cause can be heard in the Supreme Court, and that during all of said time, said receiver shall retain the funds on hand as such receiver."

The Exchange filed its motion for a new trial and the same was on the 15th day of February, 1926, overruled, exception taken, and appeal perfected to this court.

Plaintiff's petition in error contains eight assignments of error. The eight assignments of error present the following propositions:

First. The attack upon the order appointing the receiver having been instituted after the term at which the order was made, the proceeding is governed by sections 810 and 812, C. O. S. 1921.

The failure of the petition to vacate, to set out the grounds enumerated in section 810, and the failure to issue and serve summons upon the Exchange, rendered the proceedings fatally defective.

As a corollary to this proposition, the Exchange complains of the order of the court overruling its special appearance (no summons having been served upon it).

Second. There was not sufficient evidence to support the findings of the court that the mortgaged property was of sufficient value to satisfy the mortgage of the Exchange.

Third. The court erred in setting aside the order appointing a receiver, because the mortgage contained a clause whereby the parties agreed that a receiver might be appointed upon default.

Fourth. The vacation of the order appointing a receiver was an abuse of discretion.

The Bank is not contending that there was compliance with sections 810 and 812, C. O. S. 1921, but insists in propositions 2 and 3 of its brief that the trial court, sitting as a court of equity, had control of the action of the receiver, and had the right at any time to discharge the receiver appointed by it where a motion has been duly served and presented up to the final determination of the ligitation, and that therefore its proceeding to secure the vacation of the order appointing the receiver was not circumscribed by sections 810 and 812 of the statute.

The Bank's proposition numbered 1, however, presents a question of jurisdiction which requires attention before the examination of the other questions in the appeal. The Bank says:

"The Supreme Court has no jurisdiction to entertain this appeal. In other words the vacation or removal of receiver cannot be appealed from. There is no statute authorizing appeal from the district, superior or other courts of record to the Supreme Court from an order made by the district court vacating or removing a receiver, and the appeal should be dismissed."

While no motion to dismiss the appeal upon the grounds urged in the Bank's brief has been filed, nevertheless, we deem it necessary, where a question of jurisdiction is presented in the briefs, to examine and dispose of that question at the outset. Pippin v. McVickers, 87 Okla. 289, 210 Pac. 1016.

The Bank quotes section 525 of the Compiled Statutes of 1921, which is as follows:

"In all cases in the district or superior court, in which a receiver may be appointed, or refused, the party aggrieved, may, within ten days thereafter, appeal from the order of the court, or a judge thereof, refusing to appoint or refusing to vacate the appointment of a receiver, to the Supreme Court, without awaiting the final determination of such cause, and in cases where a receiver shall be, or has been, appointed, upon the appellant filing an appeal bond, with sufficient surety, in such sum as may have been required of such receiver by a court or the judge thereof, conditioned for the due prosecution of such appeal and the payment of all costs or damages that may accrue to the state, or any officer or person by reason thereof, the authority of such receiver shall be suspended until the final determination of such appeal, and if such receiver shall have taken possession of any property, real or personal, the same shall be returned and surrendered over to the appellant, upon the filing and approval of said bonds. The right of appeal herein provided for shall obtain in and be applicable to any and all actions now pending, or which may hereafter be instituted pursuant to any statutory provision, general or special."

The Bank argues that the right of appeal in receivership matters is wholly statutory; that express authority must be found in the statute for the right of appeal, and that under section 525, there is no express authority for an appeal from an order vacating the appointment of, or from an order appointing, a receiver. We believe that this position is correct. Section 525 provides for an appeal only where the court refuses to appoint a receiver, or refuses to vacate the appointment of a receiver.

However, we believe that the section applies only in cases of interlocutory appeals. The language, "without awaiting the final determination of such cause," and the abbreviated time, "within ten days," for the appeal, would indicate the legislative purpose of providing a method of review in cases of the refusal of, or refusal to vacate, the order allowing this provisional remedy without compelling the litigant to await the final determination of his cause. Shaffer et al. v. Tyrrell et al., 58 Okla. 15, 158 Pac. 626.

However, the jurisdiction of a court of equity to appoint a receiver is not limited to the stage of the suit prior to final judgment, but by statute and by general usage of courts of equity a receiver may be appointed after judgment. 34 Cyc. 43.

Section 518, C. O. S. 1921, is in part as follows:

"A receiver may be appointed by the Supreme Court, the district or superior court, or any judge of either, or, in the absence of said judges from the county, by the county judge: * * *

"Third: After judgment, to carry the judgment into effect.

"Fourth: After judgment, to dispose of the property according to the judgment, or to preserve it during the pendency of an appeal, or in proceeding in aid of execution, when an execution has been returned unsatisfied, or when the judgment debtor refuses to apply his property in satisfaction of the judgment. * * *

"Sixth: In all other cases where receivers have heretofore been appointed by the usages of the courts of equity."

Where a receiver is appointed after judgment, and such appointment is subsequently vacated and an order made awarding property in the receiver's hands to one of two adverse claimants, the right to review of this order is tested by the general statutes with reference to appeal from final orders affecting the substantial rights of the appellant.

Section 780, C. O. S. 1921, is in part as follows:

"The Supreme Court may reverse, vacate or modify judgments of the county, superior or district court, for errors appearing on the record, and in the reversal of such judgment or order, may reverse, vacate or modify any intermediate order involving the merits of the action, or any portion thereof. The Supreme Court may also reverse, vacate, or modify any of the following orders of the county, superior or district court, or a judge thereof:

"First: A final order. * * *

"Third: An order that involves the merits of an action, or some part thereof."

Section 781, C. O. S. 1921, defines a final order:

"An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding, or upon a summary application in an action after judgment, is a final order, which may be vacated, modified or reversed, as provided in this article."

Tardy's Smith on Receivers (2d Ed.) vol. 2, section 799, announces that:

"One of the tests whether an order issued in a receivership proceeding is appealable or not, is whether it is final in character and of a prejudicial effect to the interests of the appellant. If the order requires the payment of money by the one complaining, or the doing of an act by or against him, it is generally in effect a final judgment. But if before execution or enforcement it is subject to further action by the court, it is not regarded as final and not reviewable by direct appeal. It is essential that some substantial rights of the complaining party are affected by the order or decree."

In the case of Skelly Oil Co. v. Globe Oil Co. et al., reported in 82 Okla. p. 214, 200 Pac. 537, this court held:

"When mortgagee asks for foreclosure of his mortgage and asks for the appointment of a receiver upon grounds set out in section 4979 of the Revised Laws of Oklahoma 1910, and such grounds being established by the proofs, the mortgagee is entitled to have a receiver appointed, as a matter of legal right, and under such circumstances the denial to the mortgagee of a receivership would be a substantial violation of a statutory right possessed by the mortgagee."

In 3 C. J., sec. 413, p. 579, it is said:

"But an appeal will lie from final orders or decrees affecting substantial rights, either of the parties to the receivership proceedings, of the receiver, or of intervening third persons claiming rights in the property."

And in Conlon v. Kelly, 199 N. Y. 43, 92 N. E. 109, it is said:

"An order discharging a receiver appointed to carry out the judgment, in an action by a widow for the admeasurement of dower and awarding possession to the purchaser from the executrix under decedent's will, and directing the receiver to pay to the purchaser rents collected from the premises, entered on a petition by the purchaser who was not a party to the action by the widow, is a final order in a special proceeding and is appealable."

This court, in the case of Hall v. Holloway, 62 Okla. 192, 162 Pac. 186, said:

"Where a foreclosure sale is made and confirmed, and subsequently such order of confirmation is set aside, the purchaser at such sale may appeal from the making of such order to this court, as such order affects the substantial rights of the purchaser, upon a summary application in the action after judgment, and is a final order; and a motion to dismiss said appeal will not lie upon the ground that such order is not an appealable order."

The order vacating the appointment of the receiver was made upon a summary application in the action after judgment. It affected substantial rights of the Exchange, since it delivered to the Bank monies claimed by the Exchange under its mortgage and the orders and decrees of the court thereon, and it was clearly within the definition of the final order as contained in section 781, C. O. S. 1921, supra, and therefore appealable under section 780, C. O. S. 1921, supra.

With the Exchange's first contention that the proceeding to vacate the appointment of the receiver, having been commenced after the term, must be instituted by a petition and summons in compliance with sections 810 and 812, C. O. S. 1921, we cannot agree. From the record it does not appear that the Bank had notice of the hearing at which the receiver was appointed. The Bank in its brief insisted that it had none. However, the Bank, by filing its petition to vacate upon other than jurisdictional grounds, and by its prayer for affirmative relief, waived the error.

This court, in Union State Bank of Shawnee v. Mueller, 68 Okla. 152, 172 Pac. 650, said:

"Where, after a receiver is appointed without notice, the defendants filed motion to vacate and amended motion to vacate the appointment, and also filed answers to the merits and the issue upon the motion to vacate, and amended motion to vacate is tried and both sides are given ample opportunity of presenting fully their evidence, and such evidence is presented, the error in making the appointment without notice is waived."

Nevertheless, the proceeding as to the Bank was ex parte, and the rule in such cases is laid down by Alderson in his work on Receivers, at pages 874 and 875:

"But where a receiver was appointed without knowledge or consent of the defendant's counsel, although he was present in court for the purpose of opposing the motion, and the defendant thereafter moved to vacate the appointment, the court held his position to be the same as though he were opposing the original motion"; citing Merchants & Mechanics Bank v. Griffith, 10 Paige (N. Y.) 519.

The same author says, at page 877:

"When a receiver has been appointed temporarily, or in an ex parte proceeding, or before answer. and it subsequently appears from the defendant's pleading or otherwise that the appointment ought not to have been made, or that the complainant has presented no case for the intervention

of a court of equity, it is proper that the order appointing the receiver should be vacated"; citing Voshell v. Hynson, 26 Md. 83; Drury v. Roberts, 2 Md. Ch. 157.

The order appointing the receiver itself contemplates further action by the court. The receiver must qualify, proceed with the discharge of his duties, ask and receive directions from the court, make his final report, and secure an order of discharge to be relieved from his duties.

Wiltsie on Mortgage Foreclosure (3d Ed.) sec. 759, says of the receiver:

"He is the mere hand of the court in the management of the property or the fund. His appointment is in behalf of all the parties to the action, and not of the plaintiff or defendant only, and for the benefit of all who may establish an interest in the property."

The author continues (sec. 785):

"The effect of the appointment of a receiver is to remove the property from the possession of the person occupying or holding it."

The same writer says further (sec. 787):

"The property in his hands is **in custodia legis;** his possession is the possession of the court, and is entitled to its protection."

The receiver being the hand of the court, is constantly subject to its control and supervision.

The purpose of his appointment is to place the property in the custody of the court, that it may be subjected to the court's final order with respect to the rights of the parties thereto. His appointment determines no rights save the custody of the property. Wiltsie on Mortgage Foreclosure, (3rd Ed.) sec. 785.

An order appointing a receiver contemplates a final order of discharge, and is by its very nature interlocutory. Pippin v. McVickers, supra.

In Hale v. Broe, 18 Okla. 147, 90 Pac. 5, the court said:

"An order appointing a receiver is not reviewable in this court until after the final disposition of the case."

High on Receivers (4th Ed.) sec. 824, says:

"And since the appointment is itself a matter resting largely in the sound discretion of the court to which the application is addressed, if the court at a subsequent stage of the cause becomes satisfied that the appointment was improvidently made, it has undoubted power to vacate its order, thus, in effect, removing the receiver."

A similar question under a statute similar to ours was decided by the Supreme Court of Nebraska in the case of Godfrey v. Cunningham, 77 Neb. 462, 109 N. W. 765:

"An interlocutory order or ruling may be reversed and vacated at a subsequent term by the same court without compliance with the provisions of section 1612, et seq., of the Code of Civil Procedure, relating to the vacation and modification of judgments and final orders at a term subsequent to that in which rendered."

High in the edition and section, supra, of his work on Receivers, says:

"It is held in Georgia that courts of equity are regarded as being always open for the purpose of removing receivers, and that the power of removal, like the power of appointment, may be exercised by the court upon due notice in vacation. And under the statutes of Connecticut it is held that the court has the power to remove its receiver in vacation upon due notice to him. And since the appointment is itself a matter resting largely in the sound discretion of the court to which application is addressed, if the court at a subsequent stage of the cause becomes satisfied that the appointment was improvidently made, it has undoubted power to vacate its order, thus, in effect, removing the receiver."

Therefore, we conclude that an order appointing a receiver is interlocutory, and may be vacated for cause upon motion filed after the term at which the appointment was made, after such notice to the parties as the court may direct, and that such proceeding need not conform to sections 810 and 812, C. O. S. 1921, providing for verified petition and summons.

We shall next consider the third proposition of the Exchange, being its seventh assignment of error. This assignment presents a proposition which has been decided adversely to the contention of the Exchange in the recent case of Jacobs v. Real Estate Mortgage Trust Co., 122 Okla. 1, 249 Pac. 930, which holds that a contractual provision in a mortgage, stipulating for the appointment of a receiver, creates no obligation on the court to appoint a receiver; but its jurisdiction to make such appointment depends upon the provisions of the statute.

We come now to the second and fourth propositions of the Exchange, embracing its assignments of error numbered 1, 5, 6, and 8.

In these assignments the Exchange con-

tends that the court abused its discretion in vacating the order appointing the receiver; that its order vacating the appointment of the receiver, and directing payment of monies in the receiver's hands to the Bank, was against the weight of the evidence. We shall first examine the contention as to that portion of the order awarding the receivership money to the Bank. The Bank's petition alleged:

"That your petitioner has a mortgage on the crops for which receiver has been appointed, and that it furnished the money to raise this crop."

The Bank did not attach a copy of any mortgage to its petition. It did not offer any mortgage or an instrument of any character in evidence. There was no proof of a mortgage or lien of any kind. The only evidence touching the indebtedness to the Bank was that of C. W. Floyd, the mortgagor, who testified as follows:

"Q. Did you borrow money from the Oklahoma State for 1925? A. Yes. Q. That has not been paid? A. No, sir— I had to put in the casing in the well, and that has got to come out of the rents for this year."

It thus appears that there was an utter failure of proof of the Bank's lien. It further appears that in support of its allegation that it furnished money to raise the crop, it proved money furnished to case a well. Under this proof it is difficult for us to perceive how the court could award the money in the receiver's hands to the Bank (and the Bank in its brief at p. 15 is in error in asserting that the record does not show the amount, since the defendant, C. W. Floyd, testified at p. 53 of the case-made that $200 was turned over to the receiver). It is not a question of sufficiency of evidence, but of the entire absence thereof.

That portion of the court's order directing the payment of monies collected and held by the receiver to the Bank, was not supported by sufficient evidence, was clearly against the weight thereof, and accordingly erroneous.

Having reached this conclusion, we are of the further opinion that the Bank did not show any interest in the funds in the receiver's hands which would entitle it to complain against the order of August 24, 1925, appointing the receiver.

One may not complain against an order unless he is prejudiced thereby. The Bank is not a party aggrieved. It is not, and was not, the owner or in possession of the mortgaged premises or crops raised thereon. It is not, under the order of appointment of the receiver, chargeable with any expense in connection with the receivership. It utterly failed to establish any lien upon the crops.

We believe, accordingly, that the court abused its discretion in vacating the order appointing the receiver. Not only did the court vacate the order, upon application of one who failed to establish any interest in the property, or prejudice because of its custody by the receiver, but did so against the weight of the evidence which established the insufficiency of the value of the property to discharge the mortgage debt of the Exchange.

This being an equitable proceeding, the court may examine the whole record and weigh the evidence. In Clement Mortgage Co. v. Lewis, 122 Okla. 188, 253 Pac. 88, it is said:

"In a case of purely equitable cognizance, it is the duty of the Supreme Court, when the sufficiency of the evidence to support the findings of the trial court is challenged, to consider the whole record and to weigh all the evidence; and when the judgment of the trial court is clearly against the weight of the evidence, render or cause to be rendered such judgment as should have been rendered in the trial court."

A condensation of the testimony on value appears in the statement of facts in this opinion. An examination thereof will show that only the two interested witnesses, the defendants Floyd, fixed the value of the property above the mortgage indebtedness of the Exchange ($12,650 to $14,700). All of the disinterested witnesses, including the Bank's witness Braly, fixed the value below ($7,350 to $10,000). The undisputed aggregate mortgage indebtedness was $11,584. Therefore, the court's finding that the property was of sufficient value to discharge the mortgage indebtedness of the Exchange, was clearly against the weight of the evidence, and, consequently, the court's order vacating the order appointing the receiver was erroneous.

As to whether the Bank can maintain an independent action against the receiver under its lien, if such it has, we express no opinion.

For the errors mentioned, the cause must be reversed.

BENNETT, TEEHEE, LEACH, and REID, Commissioners, concur.

By the Court: It is so ordered.