## 286

### NEWMAN v. KLINGEL et al.

No. 17971.  Opinion Filed April 17, 1928.

Rehearing Denied Dec 11, 1928.

Jesse L. Ballard and Richard L. Wheatley, for plaintiff in error.

Carey Caldwell, for defendants in error.

JEFFREY, C.  This action was commenced by C. M. Newman, as plaintiff, against E. D. Klingel, P. W. Samuel, Abe Shull, and G. W. Thurston, copartners, E. G. Bennett, G. B. Bennett, and J. A. Bennett, defendants, in the district court of Craig county, for the cancellation of a certain oil and mining lease on 180 acres of land, particularly described in the petition, and all assignments thereof and contracts based thereon, for possession of said real estate, and to have the title thereto quieted in plaintiff.  The pleadings and the evidence disclose that plaintiff was owner of the land in question; that on the 31st day of August, 1917, he executed an instrument called an oil and mining lease to one W. H. Hughson, covering said land. The material parts of said lease are as follows:

"Witnesseth: That the party of the first part for and in consideration of $1 in hand paid, receipt of which is hereby acknowledged, and the royalties, covenants, stipulations and agreements hereinafter contained, and hereby agreed to be paid, observed and performed by the party of the second part, their heirs, executors, administrators, and assigns, does hereby grant, demise and let unto the party of the second part, their executors, administrators, heirs and assigns, for the full term of ten years from this date, and as long thereafter as oil, gas, coal or other mineral is found in paying quantities, all of the oil deposits, natural gas, lead, jack, coal, and all other minerals, in and under the following described lands lying and being within Craig county, state of Oklahoma, to wit: (Description of land), with the right to prospect for, extract, mine, pipe, store, confine and remove all such oil, natural gas, lead, jack, coal and other minerals, including the right to obtain from well and other sources on said land by means of pipe lines or otherwise, a sufficient supply of water to carry on said operations, and including still further right to use oil, natural gas, and coal as fuel so far as is necessary for the prosecution of said operations, with the exclusive right to prospect for * * * to drill and make borings and to sink shafts for the purpose of prospecting for and taking out coal and other minerals from said lands. And to occupy and use so much of the surface of said land as may be necessary to carry on the work of prospecting for, mining, removing and marketing such coal, oil and other minerals and disposing of same, together with as much of the surface of said lands as may be necessary and required for engine house, tipples, and operating plants, including the right to construct and maintain railroad connections and switches for the purpose of removing such coal, oil, gas and other minerals.

"In consideration of which said party of the second part, their heirs and assigns, executors and administrators, agree to pay or cause to be paid to the party of the first part, the following royalty or royalties, on all crude oil extracted from said land, 12½ per cent. on the leased premises, such payment to be made at the time of the sale or disposition of the oil, on each gas producing well utilized off said premises. $100 per annum. The party of the first part shall

have the free use of gas for lighting and warming his residence on the premises. It is further agreed that a failure on the part of the party of the second part to use gas producing well where the same cannot be reasonably utilized at the rate above prescribed, shall not work a forfeiture of this lease, and so far as the case relates to mining oil, lead, jack, coal and other minerals, but if the party of the second part desires to retain gas producing privileges, they shall pay a royalty of $50 per annum on each gas producing well not utilized. On the production of coal mined under this lease, the party of the second part shall pay the party of the first part the sum of 8 cents per ton of 2,240 pounds on mine run, or coal as it is taken from the mines, excluding what is commonly called 'slack.' On all lead, jack, and other minerals produced under this lease 8 per cent. of the gross product, on the dump, on the leased premises.

"The party of the second part further covenants and agrees to exercise diligence in the sinking of wells for oil and natural gas, and shafts in prospecting for lead, jack, coal and other minerals. on the lands covered by this lease, and to drill at least one well thereon within one year from the date hereof, or pay thereafter an annual rental of 50 cents per acre for all or any part of the said land, as second party may designate, until a well is drilled. The sinking of a well for oil or natural gas and the keeping of an accurate log thereof shall stand for the sinking of a shaft in the prospecting for lead, coal and other minerals."

Shortly after the execution of the above and foregoing lease, it was assigned to a newly organized corporation called the "Craig County Coal Company." Plaintiff was issued $5,146 worth of stock and elected a director of the corporation. However, it appears that he had little or nothing to do with the management of its affairs, and testified that he never received notice of a directors' meeting and never attended one. It also appears that the corporate stock proved to be of no value. The company endeavored to operate a small coal mine located on the land for approximately a year. The company became embarrassed financially, and several parties, together with the defendant Klingel, put up enough money to start the mine operating, and continued its operation. A mortgage was then foreclosed upon the leasehold estate, and the defendant Klingel purchased the leasehold estate at the foreclosure sale, and held it in trust for himself and his associates who last invested money in the enterprise. The corporation was then dissolved. Klingel; as trustee. executed several contracts for the purpose of mining

coal, and the defendants Abe Shull, E. G. Bennett, G. B. Bennett, and J. A. Bennett claimed interest by reason of these working contracts and assignments.

The petition alleged that the terms of the lease had been violated in many particulars, some of which were that no well for oil or gas had been drilled within a year from the date of said lease, nor had there been a delay rental paid as provided therein in case of failure to drill such well, and, further, that defendants or their assignors had not diligently prospected for lead, jack, coal and other minerals as provided by said lease.

The cause was tried as one in equity to the court, and judgment was rendered in favor of defendants, from which judgment plaintiff has appealed. Defendants did not deny, either by pleading or evidence, that no well had been drilled for oil or natural gas within the time specified in the lease, or at any time, or that no delay rental, as provided in said lease, had been paid. Neither did they deny that they had not explored or prospected for lead and jack. Plaintiff pleaded and offered evidence to prove that the coal mines which had been operated on said land had been operated in a careless and unworkmanlike manner. However, the evidence was conflicting on this question, and the trial court having found in favor of defendants, we are not disposed to inquire as to whether the judgment is against the clear weight of the evidence in this regard. We think the appeal must be disposed of on the other questions in the case.

Counsel for plaintiff assert that a breach of the terms of the lease with reference to drilling a well within a year, or paying a delay rental of 50 cents per acre, and the further provision for sinking shafts and prospecting for lead, jack, and coal, constitute a breach of material covenants and conditions of the lease, and that the same should be canceled. Counsel for defendants admits that there has been no compliance whatever with these provisions of the lease, but says, in effect, that the lands included in the lease were not suitable for oil, gas, lead and jack mining purposes; that it was never intended that the lessees and their assigns should comply with those terms of the lease; and that even though defendants' failure to comply with such terms amounted to a breach, it was only a partial breach, and would only subject the lease to cancellation for the purpose of prospecting for oil, gas, lead and jack, but leave the lease for coal mining purposes in full force and effect.

Considering the lease contract in the light that effect must be given to the mutual intention of the parties as it existed at the time of the contracting, so far as ascertainable and lawful, it is apparent from the terms of the lease that one of the principal considerations for the execution of the lease was to have the land prospected and explored for oil, gas, lead, jack and coal. The evidence shows that the parties to the original lease agreement knew that there was a coal deposit on the land. The evidence further shows that the coal deposit had been opened and worked to some extent prior to the execution of the lease. It appears that defendants did little, if anything, more than go to the coal deposit, which had been located and partially developed, and dig coal for the market. Plaintiff testified without objection that Dr. Hughson and his associates tried to lease the land for coal mining purposes on several occasions; that they only offered him eight cents a ton as royalty, and that he refused to lease on these terms. He further testified, without objection, that they later offered him a one-sixth interest in other leases in that vicinity, and agreed to prospect his land for oil, gas, lead, jack and other minerals, just as provided by the lease which was executed. He testified that he would not have given them the lease for coal mining purposes for eight cents a ton under any other circumstances. Plaintiff's evidence is supported on this point by other evidence in the record to the effect that assignments and working interests under the original lease were granted certain parties reserving as royalty from 50 cents a ton to 75 cents a ton for coal mined.

It is not even contended by counsel for defendants that that part of the lease granting the right to prospect and drill for oil and gas has not been rendered forfeitable, but he says, in so far as the lease grants a right to mine coal, the same should be sustained. But to do so would work a manifest injustice to plaintiff. It is apparent from the evidence that plaintiff would not have given a lease to merely mine coal under the terms provided for mining coal in this lease. And it is the duty of the court to construe contracts as written, and not enlarge upon the contract and make new contracts for the parties regarding matter upon which their minds have never met. George v. Curtain, 108 Okla. 281, 236 Pac. 876.

In the case of New State Oil & Gas Co. v. Dunn, 75 Okla. 141, 182 Pac. 514, a somewhat similar state of facts existed, except the lease in that case did not involve other minerals than oil and gas. One of the covenants of the lease was to complete a well on the premises within two years from the date of the lease. The form of the lease was what is commonly known as an "or lease," as the one here under consideration, but the usual provision for payment in event completion of the well was delayed was left blank. It was there said:

"Ordinarily oil and gas leases are executed for the purpose of exploring and operating for oil and gas, and when its terms will permit it, under the rules of law, such lease will be construed so as to promote development and prevent delay and unproductiveness."

See, also, Paraffine Oil Co. v. Cruce, 63 Okla. 95, 162 Pac. 716; Parish Fork Oil Co. v. Bridgewater Gas Co., 51 W. Va. 583, 42 S. E. 655; Mistletoe Oil & Gas Co. v. Revelle, 117 Okla. 144, 245 Pac. 620. The lease in question will readily yield to such construction, if it needs to be construed at all. Aside from the extrinsic evidence admitted, the covenant "to drill at least one well thereon within one year from date thereof, or pay thereafter an annual rental of 50 cents per acre for all or any part of the land, as second party may designate, until a well is drilled" is so expressed that it could not be doubted that the parties thereto intended that the land should be prospected for oil and gas by the drilling of at least one well within a year. But in case the lessee did not drill a well within the period mentioned, he had a right to delay the drilling of a well by paying the delay rental provided therein. The lease also provided that the sinking of a well for oil or natural gas and the keeping of an accurate log thereof should stand for the sinking of a shaft in the prospecting for lead, coal, and other minerals. This clearly indicates that the principal purpose for executing the lease was to have the land prospected for oil and gas. But lessees and their assigns wholly failed to comply with any of the provisions of the lease pertaining to prospecting or exploring for minerals.

In the case of Melton v. Cherokee Oil & Gas Co., 67 Okla. 247, 170 Pac. 691, it was held:

"An oil and gas lease containing a stipulation on the part of the lessee to commence operation on the premises within a year from a date certain, or pay for delay, conferred on the lessee an option to drill or pay, and a failure to do either rendered the same forfeitable at the choice of the lessor."

Almost seven years expired from the expiration of the one year provided for the drilling of a well until the commencement

of this suit. No showing was made that any attempt was ever made by these defendants, or their assignors, to comply with the drilling clause or to prospect for lead and jack, nor was any excuse offered for not doing so. We see no reason why plaintiff is not entitled to declare a forfeiture, and to have the oil and mining lease canceled and set aside.

Counsel for defendants says that plaintiff by his conduct has estopped himself from demanding the relief herein prayed. We have examined the record, and are unable to find any evidence to support this contention. It is true that plaintiff from time to time over a period of approximately seven years received royalty from the sale of coal in very small amounts, but there is nothing in this conduct inconsistent with a demand for cancellation of the lease by reason of a breach of its terms by the defendants and their assignors. Counsel says that plaintiff stood by and watched defendants expend large sums of money on the coal mines, and for that reason should be denied recovery. The evidence does not disclose any expenditure of money in prospecting or exploring for any of the minerals mentioned in the lease. In fact, the evidence shows that only such expenditures were made as were necessary for removing the coal, and it could hardly be said that either of the small mines was in any sense developed. But regardless of the amount of expenditures, plaintiff had a right to rely on the terms of his lease, and to expect performance from defendants. Neither was the mining of coal inconsistent with the other terms of the lease.

The judgment of the trial court is reversed, and the cause remanded, with directions to the trial court to enter judgment in favor of plaintiff canceling said lease.

BENNETT, HERR, TEEHEE, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.