## ROBINSON et al. v. MIRACLE et al.

No. 19592. Opinion Filed Nov. 11, 1930.

Logan Stephenson, Ethel M. Proffitt, and Jas. M. Shackelford, for plaintiffs in error.

Jess I. Miracle and A. Francis Porta, for defendants in error.

EAGLETON, C. On September 30, 1926, V. W. Miracle and Ida Miracle brought suit against E. L. Robinson and the Gibson-Zahniser Oil Corporation, a corporation, and others, to recover for drip gasoline produced from their premises and of which they claimed full ownership and concerning which the lease contract contained no specific reference. On November 10, 1926, the same plaintiffs filed another suit against Gibson-Zahniser Oil Corporation, a corporation, and E. L. Robinson, to cancel oil and gas lease on their property to wit: The east one-half (E. ½) of the northwest quarter (N. W. ¼) and the southwest quarter (S. W. ¼) of the northwest quarter (N. W. ¼) of section 25, township 11 north, range 9 east, Okfuskee county, Okla. They therein alleged that the defendants by mesne assignments acquired ownership of oil and gas lease on the premises which they executed on December 9, 1919, same being a five-year lease; that a one-year extension of said lease was given to the defendants; that the defendants drilled one well thereon, but have refused further to develop the premises or to protect the south and east lines of said lease premises from drainage; that the defendants had neglected to operate said premises skillfully or properly, thereby violating the covenants of said oil and gas lease contract. E. L. Robinson and Gibson-Zahniser Oil Corporation filed joint answer in each case. In the suit for the drip gasoline they denied that they had taken the quantity of drip gasoline alleged; alleged that the same was gas of which, under the terms of the lease, plaintiffs were entitled to one-eighth royalty, and that the plaintiffs had been delivered more than their share thereof. In the suit to cancel the lease they admitted their ownership of the lease, alleged that they had diligently operated and produced the premises, and alleged that further drilling at the time would have been impractical. The two causes were consolidated. All parties other than those above named were eliminated, and they are not parties to these proceedings.

On trial the court found, as a fact, that the parties had agreed on the interpretation to be given the terms of the lease with reference to the drip gasoline, to wit: That the plaintiffs were entitled to one-eighth thereof as royalty; that it was impossible from the evidence adduced to determine whether or not the plaintiffs had received their proper portion thereof, so no money judgment was entered thereon. The court found, however, that the defendants had so negligently cared for this drip gasoline that the court should appoint a receiver to see that the plaintiffs should obtain the portion thereof which is their due.

The court further found that the defendants had obtained a paying producing gas well on the southeast location of the southeast quarter of the northwest quarter of the lease, but that they had failed, neglected, and refused to develop diligently further, and that the plaintiffs were entitled to a cancellation of the lease except on the southeast quarter of the northwest quarter thereof by reason of the abandonment of the defendants of the balance of said lease premises, by reason of their breach of their implied covenant diligently to develop the entire lease premises.

From this judgment E. L. Robinson and Gibson-Zahniser Oil Corporation appeal. The parties will be referred to, the plaintiffs in error as lessees, the defendants in error as lessors. It might be here noted that the trial court refused to pass upon or interpret the terms of the oil and gas lease with reference to the plaintiffs' right to the drip gasoline under the terms of the lease which failed specifically to cover drip gasoline, but merely gave effect to the interpretation of the lease which the lessors and the lessees had themselves given it, and that question is not before us here.

It is well settled in this jurisdiction that there is an implied covenant, in oil and gas mining lease contracts which contain no specific provision providing for the number of wells to be drilled in case paying production is discovered, to operate diligently and develop oil and gas lease premises after paying production has been discovered thereon for the mutual benefit or profit for both lessor and lessee, and neither is, in the absence of a stipulation to that effect, the arbiter of the extent to which or the diligence with which the operations shall proceed, but both are bound by the standard of what in the circumstances would be reasonably expected of an operator of ordinary prudence having regard to the interest of both. Equity abhors forfeitures, but will, where justice requires, cancel a lease contract by reason of the lessee's failure diligently to produce

and develop the premises. Brewster v. Lanyon Zinc Co. (8th C. C. A.) 140 Fed. 801; Indiana Oil, Gas & Development Co. v. McCrory, 42 Okla. 136, 140 Pac. 610; New State Oil & Gas Co. v. Dunn, 75 Okla. 141, 182 Pac. 514; Strange v. Hicks, 78 Okla. 1, 188 Pac. 347; Pelham Petroleum Co. v. North, 78 Okla. 39, 188 Pac. 1069; Gypsy Oil Co. v. Cover, 78 Okla. 158, 189 Pac. 540; Wapa Oil & Development Co. v. McBride, 84 Okla. 184, 201 Pac. 984; Papoose Oil Co. v. Rainey, 89 Okla. 110, 213 Pac. 882; Mistletoe Oil & Gas Co. v. Revelle, 117 Okla. 144, 245 Pac. 620; Scott v. Price, 123 Okla. 172, 247 Pac. 103; Fox Petroleum Co. v. Booker, 123 Okla. 276, 253 Pac. 33; Merrill, Covenants Implied in Oil and Gas Leases, sections 3, 43, 44, 48, 53, 117. This is as well true where gas production is had as when the paying production discovered is oil. Blackwell Oil & Gas Co. v. Whitesides, 71 Okla. 41, 174 Pac. 573; Donaldson v. Josey Oil Co., 106 Okla. 11, 232 Pac. 821; Carder v. Blackwell Oil & Gas Co., 83 Okla. 243, 201 Pac. 252. Each time an effort is made to cancel a lease for breach of the implied covenant to diligently develop and produce oil and gas lease premises is controlled by its own facts. Neither lessor nor lessee may presume arbitrarily to determine of what diligence should consist, what a reasonable operator should do under the circumstances, having in mind that the purpose of the contract is the mutual benefit of the landowner and the operator, that the landowner might receive within a reasonable time the benefits, the profits, from the minerals which may be extracted from under his premises, and that the operator might make a profit on his operations of the premises. The lessee is not required to drill additional wells where the probability of his making a profit on the further operations is small. However, the lessee will not be permitted to delay unduly further drilling operations after production is obtained because of his caprice and arbitrary determination that he could make more money by deferring his further drilling operations. As was said in Brewster v. Lanyon Zinc Co., supra:

"Whether or not in any particular instance such diligence is exercised depends upon a variety of circumstances, such as the quantity of oil and gas capable of being produced from the premises, as indicated by prior exploration and development, the local market or demand therefor or the means of transporting them to market, the extent and results of the operations, if any, on adjacent lands, the character of the natural reservoir—whether such as to permit the drainage of a large area by each well—and the usages of the business. Whatever, in the circumstances, would be reasonably expected of operators of ordinary prudence, having regard to the interests of both lessor and lessee, is what is required."

In the instant case there are no producing wells draining that portion of the lease which the court canceled. However, the court found under the evidence that the lessees, in view of all the circumstances obtaining, had failed to diligently develop and operate the full lease, and had for all practical purposes abandoned the lease except the 40 acres on which the producing well is located. We cannot say that this determination is against the clear weight of the evidence so the judgment thereon will be affirmed.

The lessees further complain that the court committed an abuse of discretion in appointing a receiver to carry out the judgment or decree enforcing plaintiffs' right to the one-eighth of the drip gasoline as royalty. The court after decreeing the lessors to be entitled to this definite portion of the drip gasoline stated that he would protect the lessors against the caprice and carelessness of the lessees by appointing a receiver to care for the drip gasoline and market the same, and did so appoint a receiver. This appointment is comprehended within the first and third subsections of section 518, Comp. Stat. 1921, which, in listing the occasions on which a receiver may be appointed, provides:

"First. In an action * * * between partners or others jointly owning or interested in any property or fund * * * and where it is shown that the property or fund is in danger of being lost, removed, or materially injured"

—and:

"Third. After judgment, to carry the judgment into effect."

Though the order appointing a receiver in this cause was made on the same date and at the same hearing, and though it is contained in the journal entry which recited the judgment entered in said cause, it was not and is not a part of the judgment. It is but an interlocutory order entered after judgment appointing a receiver "to carry the judgment into effect." The review of an appointment of the receiver, appointed after judgment to aid in the enforcement of the judgment, is controlled by section 525, Comp. Stat. 1921. Blackburn v. Blackburn, 129 Okla. 127, 263 Pac. 1101; Brenner v. Tinker, 145 Okla. 110, 291 Pac. 553.

Section 525, Comp. Stat. 1921, provides for

appeals to review trial court's action on a receiver appointment order by an appeal within ten days from an order denying a receiver or an order refusing to vacate an appointment. It does not permit an appeal from an order appointing a receiver. By its very nature an appointment of a receiver is interlocutory. Pippin v. McVickers, 87 Okla. 289, 210 Pac. 1016; Exchange Trust Co. v. Oklahoma State Bank, 126 Okla. 193, 259 Pac. 589. Said section of the statute comprehends all receiverships, all appointments or vacations thereof. As is stated in the Pippin Case:

"* * * It is immaterial what reasons prompted the Legislature to word the law as we find it. The statute is plain and unambiguous, and it does not provide for an appeal from an order appointing a receiver."

The trial court has a continuing jurisdiction thereof, and may, on proper showing, review, vacate, modify, or extend the order of appointment or its terms. Wells v. Shriver, 81 Okla. 108, 197 Pac. 460; Kansas Rolling Mill Co. v. A., T. & S. F. Ry. Co. (Kan.) 1 Pac. 274; Shaffer v. Tyrrell, 58 Okla. 15, 158 Pac. 626. Until he has refused to vacate his appointment, this court may not review his action. See Kansas Rolling Mill Co. v. A., T. & S. F. Ry. Co., supra; Shaffer v. Tyrrell, supra; Exchange Trust Co. v. Oklahoma State Bank, 126 Okla. 193, 259 Pac. 589; Blackburn v. Blackburn, supra.

We do not have before us, nor do we presume to determine or express an opinion, as to whether or not an appointment of receiver made before judgment, not reviewed by appeal under section 525, Comp. Stat. 1921, would be reviewable on an appeal from the final judgment as any other interlocutory order made prior to judgment might be reviewed. See Wells v. Shriver, supra.

The cause is affirmed.

BENNETT, HERR, and REID, Commissioners, concur. HALL, Commissioner, concurs in conclusion.

By the Court: It is so ordered.